[No. B063777. Second Dist., Div. Four. June 6, 1994.]

LEON SLAVIN, Plaintiff and Respondent, v.
JOAN N. BORINSTEIN, Defendant and Appellant.

## COUNSEL

Sigel & Boothe, Dennis H. Boothe and Allan A. Sigel for Defendant and Appellant.

Buchalter, Nemer, Fields & Younger, Murray M. Fields and Michael A. Duckworth for Plaintiff and Respondent.

## OPINION

**HASTINGS, J.**—This is an appeal from an award in favor of contractor Leon Slavin (respondent) and against property owner Joan W. Borinstein (appellant) for contracting costs, fees and profits relating to a residence in Bel Air. Appellant asserts one issue on appeal: that the trial court erred in not finding that an amendment to the original agreement between appellant and respondent dated August 10, 1983, was a covenant which limited respondent's recovery for contractor's fees to the total sum of $300,000. We find appellant's argument without merit and we affirm.

### STATEMENT OF FACTS

In December of 1981, Albert Fink (Fink), appellant's agent, asked respondent if he would like to build a custom house in Los Angeles for appellant. Respondent answered in the affirmative and asked to see a set of plans; however, no set was available. Fink asked respondent to send him a resume of his prior contracting experience, and respondent complied on December 31, 1981.

Shortly thereafter, respondent spoke with Fink about the conditions under which he would work as a contractor. Fink indicated that appellant was prepared to pay a fee of 10 percent of cost, and that she preferred to set the fee in that manner because the drawings had not been completed. Fink also

advised respondent that appellant wanted him to start the job immediately. Respondent agreed orally to build the structure for his cost plus 10 percent.

On January 11, 1982, respondent sent Fink a standard American Institute of Architects form contract and asked whether it met with Fink's approval. Fink never executed it, advising respondent that he did not like the form and would draw up an appropriate contract. Respondent never received a contract from Fink.

Meanwhile, respondent received sufficient plans to enable him to obtain a building permit and to begin construction. To confirm the agreement he had reached with Fink, respondent sent Fink a memorandum dated April 5, 1982, which stated: "This will confirm our mutual agreement as follows pertaining to the subject building project: [¶] 1. Leon Slavin will perform general contractor duties for the construction of the subject project in accordance with plans & spec. prepared by Fred Briggs, architect. [¶] 2. The scope of work will include the complete building with the exception of certain items of work to be done by owner. These items will be determined by owner. [¶] 3. Contractor fee shall be 10% of total cost of work completed each month. [¶] 4. Payments shall be made each month for cost of construction plus said contractor fee. [¶] 5. Formal contract by owner will follow." No formal contract followed.

From April 1982, through November 1983, respondent furnished labor and materials in construction of the house. As provided by their agreement, requests for payment of construction costs and contractor's fees were made on a monthly basis except for the periods between April through June 1982, and July through August 1982, in which there was only one billing for the amount owing in each of those periods. In total, respondent sent to appellant 17 payment requests. Requests 1-8 were paid in their entirety, while request number 9 was paid in two installments, and request number 10 was paid in three installments. Beginning with request number 11, no construction fees were paid, and appellant fell behind on payment of construction costs. As of the end of July, appellant owed respondent $369,983 for unpaid construction costs and contractor's fees.

Respondent approached Fink and advised him that the arrearage was causing problems. Fink advised respondent that appellant was "having some cash flow problems" and that "we have decided that we are not going to pay you anymore than a maximum of $300,000, regardless of what the cost of the project would be. . . ." Respondent became upset and Fink advised him, "You can go take it or leave it. If you don't like it, then you can sue me." Because respondent was hard-pressed for money, he advised Fink "that if he

would agree to bring [respondent] current, on the unpaid balances, that [respondent] would accept that $300,000 maximum fee." Fink said that he would take it up with appellant and let him know. A few days later respondent called Fink and asked whether Fink had discussed the matter with appellant. Fink advised him that they were not going to pay more than the $300,000. Respondent asked whether they were going to bring him current and Fink advised "they would do the best they could on that."

After the latter conversation, respondent sent a letter dated August 10, 1982, to appellant to confirm the proposed modification. It is this letter which is the subject of the appeal. The letter stated as follows: "This will confirm our mutual agreement that our original owner/contractor agreement (April 5, 1983 [*sic*]) of cost plus contractor fee of 10% of costs for the construction work at the subject project be amended to limit the aforementioned 10% of cost contractor fee to a maximum sum of $300,000, payable in 18 equal payments. [¶] In accordance with the original agreement between us, to date there have been 13 billings for said contractor fee for a total of $233,522.97. [¶] Please advise me if the above meets with your approval." Fink was to speak with appellant about the proposed modification and then confirm it with respondent.

At this point, the evidence conflicts. Respondent testified at trial that he received no response from either appellant or Fink agreeing to the modification proposal set out in the letter. Fink testified that prior to receiving the letter it was his understanding that respondent would continue with the project and take $300,000 "based upon a percentage completion of the house." When he received the letter he contacted respondent and advised him that they were not going to pay in 18 equal installments but were only going to pay on a "pro rata percentage as to the completion of the house." Respondent testified that at no time was there any agreement that he would accept his contractor's fees based upon a percentage of the work completed. He never received any additional payments for contractor's fees, although, from time to time, he did receive payments for construction costs. Ultimately he stopped work on the project.

During September and October 1991, a court trial was held relating to claims by respondent against appellant for recovery of construction costs, fees and loss of profits, and counterclaims by appellant against respondent relating to construction defects.[1] On October 10, 1991, the trial court filed a notice of tentative decision. The document stated, in part: "44. The foregoing shall be deemed the court's Statement of Decision, unless a formal request

---

[1]A second action by respondent against Albert Fink was consolidated with this action. A separate appeal generated by the action against Fink is not germane to this appeal.

for a Statement of Decision is filed and served pursuant to the provisions of Code of Civil Procedure [section] 632 and California Rules of Court, Rule 232." The record on appeal does not reflect that any statement of decision was requested, and respondent's brief advises us that none was made. On November 22, 1991, a judgment was rendered in favor of respondent awarding him sums for unpaid construction costs plus interest, unpaid contractor's fees plus interest and loss of net profits plus interest, for a total sum of $875,644.17. An offset was awarded in favor of appellant in the amount of $36,430.21, without interest.

## DISCUSSION

### A. *The Statement of Decision*:

■ In a nonjury trial the appellant preserves the record by requesting and obtaining from the trial court a statement of decision pursuant to California Code of Civil Procedure section 632. The statement of decision provides the trial court's reasoning on disputed issues and is our touchstone to determine whether or not the trial court's decision is supported by the facts and the law. (*In re Marriage of Ditto* (1988) 206 Cal.App.3d 643, 647 [253 Cal.Rptr. 770].) ■ In the absence of a statement of decision, the appellate court will presume that the trial court made all factual findings necessary to support the judgment for which substantial evidence exists in the record. (*Ibid.*)

■ Respondent insists that no statement of decision exists in this case because appellant failed to request one; therefore, the statement of intended decision is a nullity, citing *In re Marriage of Ditto*, *supra*, 206 Cal.App.3d 643 and *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130 [275 Cal.Rptr. 797, 800 P.2d 1227]. Respondent concludes that we must indulge in the presumption that the judgment is correct and that the trial court made all factual findings necessary to support the judgment. Appellant replies that because the statement of intended decision specifically provided that it would become the statement of decision in absence of a request pursuant to Code of Civil Procedure section 632, by operation of law the statement of intended decision became the statement of decision. Appellant is correct.

While we have found no case directly on point, California Rules of Court, rule 232(a) states: "The court in its tentative decision may (1) state whether a statement of decision, if requested, will be prepared by the court or by a designated party, and (2) direct that the tentative decision shall be the statement of decision unless within ten days either party specifies controverted issues or makes proposals not covered in the tentative decision." This

language is clear and unambiguous and allows the court to convert the tentative decision into the statement of decision. The trial court in this instance chose this option. Respondent's reliance on *In re Marriage of Ditto, supra,* and *In re Marriage of Arceneaux, supra,* is misplaced. Neither case indicates that the trial court availed itself of the option allowed by rule 232(a). We therefore find that the statement of intended decision became a statement of decision as contemplated by Code of Civil Procedure section 632 and rule 232(a).

B. *The Alleged Modification:*

Appellant insists that the modification of August 10, 1982, was a covenant which restricted respondent's recovery for contractor's fees to the sum of $300,000 and that the trial court erred as a matter of law by not abiding by this covenant. Appellant's argument rests upon the foundation that the trial court made a finding that on August 10, 1983, there was a modification of the original agreement of April 5, 1982. Without this finding, the appeal must fail.

Our review of the statement of decision shows that, contrary to appellant's position, the trial court found that no modification occurred. Findings 11 and 12 state as follows: "11. In the early part of August 1983, at a time when [appellant] owed [respondent], by her own records, in excess of $198,000.00, Fink approached [respondent] concerning what he claimed were escalating costs on the construction project. At that time Fink told [respondent] that he would pay only a total contractor's fee of $300,000.00, regardless of the ultimate cost of the construction project. [Respondent] protested, but he believed that he was in a severe adverse economic position, because of the substantial debt owed to him at the time. Fink presented the proposal for a modification of the agreement set forth in paragraph 6 above on a 'take it or leave it' basis. [Respondent] informed Fink that he would reluctantly accept the modification, but only on the condition that his new fee of a maximum of $300,000 be paid to him in 18 equal payments. At the time of the discussion between Fink and [respondent] concerning a modification, [respondent] had presented 13 billings, for a total fee of $233,522.97. [¶] 12. [Respondent] sent a memorandum dated August 10, 1983 to Fink, confirming the modification agreement. Fink received the memorandum but made no response to it. Fink did not comply with the conditions of the modification agreement, *and therefore, the original agreement was never effectively modified.* [Respondent] concluded that the proposed modification agreement was not accepted by Fink, because the payments required by the modification agreement were not made, and this conclusion by [respondent] was justified. As [appellant's] agent, the actions of Fink must be imputed to

[appellant] as her own." (Italics added.) We find that substantial evidence supports these findings.

The trial court found that the original contract was oral. Civil Code section 1697 provides how an oral contract may be modified: "A contract not in writing may be modified in any respect by consent of the parties, in writing, without a new consideration, and is extinguished thereby to the extent of the modification." The key is whether or not there was consent of the parties. Civil Code section 1580 states: "Consent is not mutual, unless the parties all agree upon the same thing in the same sense. . . ." Civil Code section 1581 states: "Consent can be communicated with effect, only by some act or omission of the party contracting, by which he intends to communicate it, or which necessarily tends to such communication." Finally, Civil Code section 1584 states: "Performance of the conditions of a proposal, or the acceptance of the consideration offered with a proposal, is an acceptance of the proposal." In light of these provisions we now look at the evidence relating to the alleged modification.

Initially, when the parties began to negotiate for a modification, Fink advised respondent that the offer of $300,000 was a "take it or leave it" offer. Respondent reluctantly countered by advising Fink that he would reduce his contractor's fees to the sum of $300,000, but only if appellant agreed to bring the arrearages current. This was not an acceptance of Fink's proposal because it added a further condition. Fink said he would check with appellant about bringing the payments current. When respondent called him a few days later and asked whether they would bring his arrearages current, Fink did not agree to do so stating only that "they would do the best they could . . . ." This did not meet the terms of respondent's offer; therefore, there was no acceptance of the original offer made by respondent.

Respondent then sent a new offer in writing, the letter of August 10, 1983. However, the evidence also establishes that there was no acceptance of this written offer. Respondent testified that he received no response to the letter. Fink testified that he thought the terms of the letter, setting out 18 equal installments, varied from his understanding of the original offer and that the terms in the letter were not acceptable to either him or appellant and he so advised respondent. The evidence reflects that no further payments were made on the contractor's fees; therefore, there was no acceptance by performance.

The evidence clearly supports the court's finding that there was no modification of the agreement of April 5, 1982. The court did not err.

DISPOSITION

The judgment is affirmed. Costs are awarded to respondent.

Woods (A. M.), P. J., and Klein (Brett), J.,* concurred.

Appellant's petition for review by the Supreme Court was denied August 24, 1994.

---

*Judge of the Municipal Court for the Los Angeles Judicial District sitting under assignment by the Chairperson of the Judicial Council.