[No. D018407. Fourth Dist., Div. One. Sept. 26, 1995.]

In re the Marriage of LESLIE and NORLENE STEPHENSON.
LESLIE STEPHENSON, Respondent, v.
NORLENE STEPHENSON, Appellant.

72

COUNSEL

Scott B. Tepper and Robert M. Garland for Appellant.

Andrew J. Parrott for Respondent.

OPINION

**WORK, Acting P. J.**—Following the dissolution of their 31-year marriage, Norlene Stephenson appeals that portion of an order reducing spousal support from $1,500 to $345 because of a change in circumstances arising from Leslie Stephenson's election to take an early retirement at age 59. She contends Leslie's decision to retire early from his $75,000-a-year job constituted a voluntary and deliberate attempt to reduce or extinguish his spousal support obligation, requiring the trial court to consider his earning capacity in evaluating his request for termination or modification of support. Moreover, she contends former Civil Code[1] section 4801, subdivision (a) (repealed by Stats. 1992, ch. 162; now Fam. Code, § 4320) was improperly applied to the facts and that, in any event, Leslie has failed to adequately prove there was a change in circumstances justifying modification of support at the time the request was made. As we shall explain, we conclude the nature of the cessation of employment, be it retirement, quitting or layoff, or whether voluntary or involuntary in character, is irrelevant when it comes to the trial court's duty to consider statutory criteria before determining support obligations. For, a spouse's obligation to continue support is predicated upon the enumerated statutory criteria including reasonable earning capacity under the circumstances, regardless whether there is evidence of deliberate avoidance of support obligations. Accordingly, we affirm the portion of the order that treats Leslie's severance pay ($52,000) as the equivalent to eight and one-half months of salary and refuses to modify the $1,500 monthly support obligation during that time, because it is amply supported by the record. However, we reverse that portion of the order reducing the monthly spousal support to $345 after the expiration of that time period; for, it was premature under the circumstances and the trial court abused its discretion in not applying the statutory criteria under former section 4801 (now Fam. Code, § 4320), including earning capacity.

I

Leslie and Norlene were married in 1952, when Norlene was 17 years of age. The parties legally separated in 1983. Since December 1, 1957, Leslie

---

[1] All statutory references are to the Civil Code unless otherwise specified.

had been employed by Otis Elevator Company and by late 1992 at 59 years of age he was a construction supervisor earning approximately $74,000 per year. During the marriage, Norlene was the homemaker and worked in various secretarial positions. After they separated, Norlene attempted to become trained and earn a living as a professional photographer, having no other vocational skills other than secretarial. Plagued by various health problems (i.e. sacroilitis, ankylosing spondylitis and fibrositis) requiring the use of medication to control the constant pain, her efforts to establish a career as a professional photographer have been modestly fruitful, as she has been hampered by not only her physical disability, but also a lack of capital funds to start up and carry on the business and the theft of her photographic equipment.

At the time of dissolution, Leslie was ordered to pay Norlene monthly spousal support of $2,000. In May 1991, spousal support was modified from $2,000 to $1,500 retroactive to March 1991. In August 1992, Leslie filed an order to show cause for modification of spousal support, declaring his intent to retire in October 1992, from Otis Elevator Company. In his supplemental declaration, Leslie explained the nature of his retirement from Otis Elevator Company as a construction superintendent as follows: "One does not need to think too hard to realize that construction of all sorts has come to a virtual standstill in San Diego County. And one needs only to take a look around the skyline of downtown San Diego to realize that there are no new skyscrapers under construction. About the only construction being done these days is a small amount of homebuilding. Homes do not need elevators. My approaching sixtieth birthday and the standstill in construction have coincided. There was an 'understanding' between me and my employer that it would be a wise decision on my part to retire. In fact, I answered [Norlene's counsel's] question whether the company would benefit from my continuing to work for them as follows: 'Two more heads are rolling this week. There's not any openings.' He asked me whether there were any incentives for retiring other than what I described as 'the golden handshake' of one week of pay for every year I had worked for Otis. There was not." In other words, Leslie decided to retire and receive the $52,000 in severance pay because the chances of being laid off were high and, if he had not retired, but risked continued employment, and were terminated, he would not receive any severance pay.

By order filed on December 4, the trial court reduced spousal support from $1,500 to $345 per month, commencing July 15, 1993, approximately eight and one-half months after Leslie's date of retirement. Essentially, the trial court determined the severance pay amounted to eight and one-half months' normal salary for Leslie, resulting in its prospective order monthly

spousal support be reduced eight and one-half months from the date of his retirement to $345 only if the circumstances remain unchanged and the only income to both parties continues to be their retirement. The court determined that at that time, Leslie's income would be $1,200 and Norlene's income would be $295. In its order entered January 29, 1993, the court expressly stated: "Spousal support shall be modified as ordered herein only if the income to each party remains only pension/retirement payments each is entitled to." Norlene timely filed a notice of appeal on February 8.

## II

■ Norlene contends the record establishes Leslie's decision to retire early was voluntary and constituted a deliberate attempt to reduce or extinguish his spousal support obligation to her, requiring the trial court to consider his earning capacity in evaluating his request for modification of support. Leslie responds the trial court properly did not apply that standard because the record did not demonstrate he had deliberately depressed his income. However, as we shall explain, within the context of the trial court's duty to apply governing statutory criteria to determine support obligations, it matters not the nature of the cessation of employment or whether it be voluntary or involuntary in character. For, a supporting spouse's further obligation to support, and the level of that obligation, is predicated upon the enumerated statutory criteria including reasonable earning capacity under the circumstances regardless whether there is any evidence of deliberate avoidance of support obligation.

■ Preliminarily, spousal support " 'must be determined according to the needs of both parties and their respective abilities to meet these needs. [Citation.] In this regard, a trial court has broad discretion and an abuse thereof only occurs where it can be said that no judge reasonably could have made the same order.' " (*In re Marriage of Meegan* (1992) 11 Cal.App.4th 156, 161 [13 Cal.Rptr.2d 799], quoting *In re Marriage of Rome* (1980) 109 Cal.App.3d 961, 964 [167 Cal.Rptr. 351]; see former § 4801, now Fam. Code, § 4320.[2]) Similarly, whether a spousal support order should be modified is a matter within the sound discretion of the trial court, predicated upon a showing of a material change of circumstances since the last spousal

[2]Former section 4801 (now Fam. Code, § 4320) states in pertinent part:

"(a) In any judgment decreeing the dissolution of a marriage or a legal separation of the parties, the court may order a party to pay for the support of the other party any amount, and for any period of time, as the court may deem just and reasonable, based on the standard of living established during the marriage. In making the award, the court shall consider all of the following circumstances of the respective parties:

"(1) The extent to which the earning capacity of each spouse is sufficient to maintain the standard of living established during the marriage, taking into account all of the following:

support order. (*In re Marriage of Meegan, supra*, 11 Cal.App.4th at p. 161; *In re Marriage of Olson* (1993) 14 Cal.App.4th 1, 7, 9 [17 Cal.Rptr.2d 480].)

The moving party bears the burden of establishing a material change of circumstances since the last order was made in order to obtain modification of the spousal support order. (*In re Marriage of Olson, supra*, 14 Cal.App.4th at p. 9; *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705, 710 [250 Cal.Rptr. 148]; *In re Marriage of Norvall* (1987) 192 Cal.App.3d 1047, 1060 [237 Cal.Rptr. 770].) In determining whether a change of circumstances has occurred, the trial court is required to reconsider the same standards and criteria set forth in former section 4801 and now Family Code section 4320[3] it considered in making the initial long-term order at the time of judgment

"(A) The marketable skills of the supported spouse; the job market for those skills; the time and expenses required for the supported spouse to acquire the appropriate education or training to develop those skills; and the possible need for retraining or education to acquire other, more marketable skills or employment.

"(B) The extent to which the supported spouse's present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported spouse to devote time to domestic duties.

"(2) The extent to which the supported spouse contributed to the attainment of an education, training, a career position, or a license by the other spouse.

"(3) The ability to pay of the supporting spouse, taking into account the supporting spouse's earning capacity, earned and unearned income, assets, and standard of living.

"(4) The needs of each party based on the standard of living established during the marriage.

"(5) The obligations and assets, including the separate property, of each.

"(6) The duration of the marriage.

"(7) The ability of the supported spouse to engage in gainful employment without interfering with the interests of dependent children in the custody of the spouse.

"(8) The age and health of the parties.

"(9) The immediate and specific tax consequences to each party.

"(10) Any other factors which it deems just and equitable."

[3]Family Code section 4320 states:

"In ordering spousal support under this part, the court shall consider all of the following circumstances:

"(a) The extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage, taking into account all of the following:

"(1) The marketable skills of the supported party; the job market for those skills; the time and expenses required for the supported party to acquire the appropriate education or training to develop those skills; and the possible need for retraining or education to acquire other, more marketable skills or employment.

"(2) The extent to which the supported party's present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported party to devote time to domestic duties.

"(b) The extent to which the supported party contributed to the attainment of an education, training, a career position, or a license by the supporting party.

"(c) The ability to pay of the supporting party, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living.

"(d) The needs of each party based on the standard of living established during the marriage.

and any subsequent modification order. (*In re Marriage of Prietsch & Calhoun* (1987) 190 Cal.App.3d 645, 655 [235 Cal.Rptr. 587].) These statutes expressly require the trial court to consider the supporting spouse's ability to pay taking into account his or her earning capacity. (Former § 4801, subd. (a)(3); Fam. Code, § 4320, subd. (a).) Accordingly, even if Leslie shows a change of circumstances in actual income as the result of retirement, modification is not necessarily mandated given the court's obligation to reconsider the statutory standard, especially the reasonable needs and financial abilities of the parties. (See *In re Marriage of Prietsch & Calhoun, supra,* 190 Cal.App.3d at p. 655.) "Thus, although a showing of changed circumstances is necessary to obtain the court's consideration of a modification of spousal support, it does not ensure that a modification will be granted." (Samuels & Mandabach, Practice Under the Cal. Family Code (Cont.Ed.Bar 1995) § 6.24, p. 168.)

It is undisputed it has long been the rule the trial court could consider a supporting spouse's earning capacity when determining spousal support. However, several courts have applied this rule only where the supporting spouse has demonstrated a willful intention to avoid fulfilling familial financial support obligations through deliberate misconduct. (*In re Marriage of Meegan, supra,* 11 Cal.App.4th at p. 163; *In re Marriage of Regnery* (1989) 214 Cal.App.3d 1367, 1371 [263 Cal.Rptr. 243]; see also *Philbin* v. *Philbin* (1971) 19 Cal.App.3d 115, 121 [96 Cal.Rptr. 408].) In *In re Marriage of Simpson* (1992) 4 Cal.4th 225, 233 [14 Cal.Rptr.2d 411, 841 P.2d 931], the Supreme Court acknowledged a number of decisions would permit a trial court to consider a supporting spouse's earning capacity, as opposed to actual income, only where the supporting spouse deliberately suppresses income to avoid support obligations. However, the court did not resolve whether a trial court's authority to consider the supporting spouse's earning capacity is so limited, because the trial court there had found deliberate conduct by the father primarily motivated to avoid family support obligations, a finding amply supported by substantial evidence. (*Id.* at pp. 233-234.) Nevertheless, the Supreme Court explained: "[T]he statutory guidelines governing spousal and child support do not limit the circumstances under which the trial court may consider the earning capacity of the supporting spouse or in any way restrict the trial court's discretion in the manner in which it may consider earning capacity as well as actual income in fixing

"(e) The obligations and assets, including the separate property, of each party.

"(f) The duration of the marriage.

"(g) The ability of the supported party to engage in gainful employment without unduly interfering with the interests of dependent children in the custody of the party.

"(h) The age and health of the parties.

"(i) The immediate and specific tax consequences to each party.

"(j) Any other factors the court determines are just and equitable."

support [citations], with the exception that in fixing child support, reliance on earning capacity must be 'consistent with the best interests of the children.' [Citation.]" (*Id.* at p. 233, quoting former § 4721, subd. (f)(2).)

Historically, courts focused on earning capacity, rather than actual earnings, to fashion familial support orders in those limited situations where the record revealed a spouse was deliberately attempting to avoid familial financial responsibilities by refusing to accept or seek gainful employment. (See *In re Marriage of Meegan, supra,* 11 Cal.App.4th at pp. 161-163; *In re Marriage of Sinks* (1988) 204 Cal.App.3d 586, 594 [251 Cal.Rptr. 379]; *In re Marriage of Williams* (1984) 155 Cal.App.3d 57, 62 [202 Cal.Rptr. 10]; *Philbin* v. *Philbin, supra,* 19 Cal.App.3d at p. 121; see also *In re Marriage of Everett* (1990) 220 Cal.App.3d 846, 859 [269 Cal.Rptr. 917].) In *In re Marriage of Nolte* (1987) 191 Cal.App.3d 966, 972-973 [236 Cal.Rptr. 706], the court held "the *Philbin*" rule immediately above was altered by the enactment of support statutes permitting the trial court to consider earning capacity of either or both parents in fixing a support award. (See also *In re Marriage of Ilas* (1993) 12 Cal.App.4th 1630, 1638 [16 Cal.Rptr.2d 345]; *In re Marriage of Everett, supra,* 220 Cal.App.3d at p. 859; *In re Marriage of Regnery, supra,* 214 Cal.App.3d at p. 1372.) The *Nolte* court essentially reasoned the legislation changed the *Philbin* rule, which used the earning capacity standard to punish the person who made a deliberate attempt to avoid his or her support obligations. (*In re Marriage of Nolte, supra,* 191 Cal.App.3d at p. 973; *In re Marriage of Ilas, supra,* 12 Cal.App.4th at p. 1638.) In *In re Marriage of Meegan, supra,* 11 Cal.App.4th at page 163, the court held findings of good faith, however, prevented use of earning capacity standard. In *In re Marriage of Ilas, supra,* 12 Cal.App.4th at pages 1638-1639, the court disagreed, declaring: "While deliberate avoidance of family responsibilities is a significant factor in the decision to consider earning capacity [citation], the statute explicitly authorizes consideration of earning capacity in all cases. ([Former] § 4801, subd. (a)(1).) Accordingly, the trial court's consideration of earning capacity is not limited to cases in which a deliberate attempt to avoid support responsibilities is found."

Shortly thereafter, the court in *County of Yolo* v. *Garcia* (1993) 20 Cal.App.4th 1771, 1780-1783 [25 Cal.Rptr.2d 681], reexamined the *Philbin* rule and the cases relied upon by that court (see, e.g., *Webber* v. *Webber* (1948) 33 Cal.2d 153, 161 [199 P.2d 934]), concluding whether earning capacity may be relied on in lieu of actual income turns on the state of the evidence; a parent has the responsibility to provide for familial economic security by making reasonable attempts to seek and accept employment to support a child; and thus the dispositive issue is whether the evidence will sustain the inference the party charged with support could, with reasonable

effort, obtain employment generating the higher income. (*County of Yolo* v. *Garcia, supra*, 20 Cal.App.4th at p. 1781.) After analyzing the *Webber* decision, the court explained: "Thus, the rationale for the *Philbin* rule is that a fair and logical deduction that ability to earn exceeds actual income can only be made where there is evidence that the party to be charged has failed to make a reasonable effort to obtain employment that would generate a higher income. The proponent of the claim for past support has the burden of persuasion and the burden of production of evidence to establish the parent's ability to earn an income sufficient to defray support. [Citation.] The proponent of support may employ discovery to ascertain the facts to satisfy these burdens. Accordingly, it is appropriate that in the absence of evidence affording an inference that earning capacity exceeds actual earnings the capacity to earn is equivalent to earnings." (*County of Yolo* v. *Garcia, supra*, 20 Cal.App.4th at p. 1782.) The court then challenged the *Nolte* holding, reexamining former section 4721 (now Fam. Code, § 4055) and concluding its consideration of earning capacity is not an alteration, but simply a reiteration, of existing law. The court summarized: ". . . *Nolte* and its progeny are incorrect in concluding that the *Philbin* rule has been altered by statute. Nor, as related above, do we perceive the *Philbin* rule as 'punitive' in nature. The statute's provision requiring 'consider[ation]' of earning capacity is entirely consistent with the existing rule that earning capacity be deemed equivalent to actual income in the absence of evidence of unreasonable failure to seek or accept employment or more remunerative employment." (*County of Yolo* v. *Garcia, supra*, 20 Cal.App.4th at p. 1783.)

We find *County of Yolo* persuasive as well not only with regard to spousal support, but especially within the context of any type of premature cessation of employment, including early retirement. ■ Accordingly, where the supporting spouse elects to retire early and to not seek reasonably remunerative available employment under the circumstances, then the court can properly impute income to that supporting spouse given that spouse's obligation to provide support and the general notion a supporting spouse must make reasonable efforts to obtain employment which would generate a reasonable income under the circumstances to meet a continuing support obligation. Indeed, a supporting party's retirement or cessation of gainful employment does not automatically compel a finding of a sufficient changed circumstance to warrant a decrease or termination of a support obligation.

Rather, whether modification is warranted is governed by the surrounding circumstances and the trial court's consideration of relevant statutory criteria.[4]

## III

Here, the trial court refused to make an ability to earn finding, apparently persuaded by its perception of the impact of a poor economy on the construction industry and thus the reasonableness of Leslie's decision to retire with $52,000 in severance pay. However, the court refused to modify the $1,500 per month support order for another eight and one-half months, treating the severance pay as the equivalent to the salary Leslie would have earned during that time. Upon doing so, the trial court essentially determined there had been no change of circumstances warranting modification of the support order at the time of application. The court then made the future modification to $345 per month contingent upon the parties' income being solely their retirement and no further change in circumstances. The trial court admonished the parties that in light of their limited retirement income, both would have to find additional support and work, because there simply is not "enough money" to support them both. In fact, the trial court assigned them a "goal" "to seek alternate means of supplementing their respective incomes" during the next eight and one-half months.

Once the trial court treated the severance pay as the equivalent of salary for eight and one-half months and continued the existing support obligation of $1,500 per month during that time period, the court had thus impliedly found no change of circumstances at the time of application and during that following eight-and-one-half-month period. Consequently, the issue of whether to modify spousal support was premature and not ripe for decision at that time. Indeed, during the interim, the parties had the opportunity to obtain, as directed by the court, alternative sources of income and work. By prematurely reducing spousal support prospectively, the trial court shifted the ultimate burden of proof from Leslie to Norlene to establish a change of circumstances warranting modification of the monthly spousal support order.

The trial court found Leslie reasonably elected retirement under the circumstances, a decision essentially involuntary as it is deemed compelled by the economic downturn's effect on the construction industry.

---

[4] We do not imply a supporting spouse who is eligible for retirement having obtained retirement age must continue working to provide spousal support at the *current* level. What continuing support obligation is reasonable is governed by an evaluation of the totality of the surrounding circumstances unique to each individual case, including earning capacity.

That finding is amply supported by the record.[5] The court's implied finding Leslie was thus not deliberately avoiding familial financial responsibilities by suppressing income or quitting work is similarly supported by the record. However, as we have explained, deliberate avoidance is not a prerequisite to a trial court's responsibility under the statutory scheme to consider earning capacity and ability to pay. Consequently, the trial court erred in declining to consider earning capacity and Leslie's ability to pay, as well as the other criteria set forth in former section 4801, presently Family Code section 4320, when it decided to reduce the monthly support to $345, eight and one-half months down the road. Those provisions require the trial court to consider before modifying an existing spousal support order the supporting spouse's ability to pay, taking into account his or her earning capacity, earned and unearned income and assets. Given the temporal nature of the trial court's order it should have calendared a hearing near the expiration of that time period to determine whether and to what extent as governed by statutory criteria Leslie had established changed circumstance warranting a specific reduction of spousal support. The impact of the trial court's premature order improperly shifted the ultimate burden of proof from Leslie to Norlene to establish the changed circumstances necessary for the modification of the spousal support order without considering mandatory statutory criteria. Under the trial court's order, Norlene would be required to show either Leslie's income is greater than his pension[6] or that changed circumstances warrant modification of the spousal support order upward from $345.

Having said all this, the fate of the trial court's order modifying the spousal support obligation is evident. That portion of the order treating the severance pay as equivalent to eight and one-half months of salary and refusing to modify the support obligation of $1,500 per month during that time period is amply supported by the record and does not constitute an abuse of discretion. However, upon so ordering, the trial court impliedly concluded no change in circumstances warranting modification at that time. Having done so, the court's reduction of the spousal support obligation to $345 per month after the expiration of that eight-and-one-half-month time

---

[5]In reviewing findings supporting a trial court's exercise of discretion in modifying spousal support, ". . . this court must accept as true all evidence tending to establish the correctness of the trial judge's findings, resolving all conflicts in the evidence in favor of the prevailing party and indulging in all legitimate and reasonable inferences to uphold the judgment. When a finding of the trial court is attacked as being unsupported, our power begins and ends with a determination of whether there is any substantial evidence which will support the conclusions reached by the trial court. [Citation.]" (*In re Marriage of Meegan, supra,* 11 Cal.App.4th at p. 161.)

[6]The modification order was contingent on the parties' respective incomes remaining solely their pension/retirement payments.

period was premature and rested not on those circumstances including earning capacity the trial court is statutorily mandated to consider in determining whether to modify a spousal support obligation. Accordingly, we reverse that portion of the order reducing the spousal support obligation and remand the matter to the trial court for a full hearing considering all the criteria set forth in former section 4801 and now Family Code section 4320, including earning capacity.[7] The resolution of that issue will determine whether Leslie owes Norlene any spousal support arrearages from July 15, 1993.

DISPOSITION

That portion of the order continuing spousal support of $1,500 per month to July 15, 1993 is affirmed. That portion of the order reducing spousal support to $345 per month beginning July 15, 1993, is reversed, and the matter is remanded to the superior court for further proceedings consistent with this opinion. Norlene is entitled to costs on appeal.

Huffman, J., and Nares, J., concurred.

---

[7]On remand, under the circumstances here where Leslie has no actual earnings due to retirement, once he establishes his actual income is solely his retirement income, the burdens of persuasion and production of evidence to establish the preliminary fact of his ability to earn an income sufficient to defray existing support needs do not shift to Norlene for her to establish a reasonable inference his earning capacity exceeds his zero actual earnings. (Cf. *County of Yolo* v. *Garcia, supra,* 20 Cal.App.4th at p. 1782.) Rather, because Leslie has *no actual earnings,* the trial court must determine his earning capacity, that is the income he is reasonably capable of earning based on a reasonable work regimen given his health, age, education, marketable skills and vocational history and the availability of employment opportunities. (*In re Marriage of Simpson, supra,* 4 Cal.4th at p. 234.) Leslie will attempt to show limited availability of employment opportunities, while Norlene will endeavor to prove otherwise. However, unlike the trial court's order we reverse reducing the monthly support to $345, eight and one-half months later without considering required statutory criteria at that time, the *ultimate* burden of proof of establishing changed circumstance warranting modification downward remains on Leslie.