[No. A084555. First Dist., Div. Three. Oct. 27, 1999.]

In re the Marriage of JANE O. and DAVID W. RISING.
JANE O. RISING, Appellant, v.
DAVID W. RISING, Respondent.

**COUNSEL**

Law Offices of Bernard N. Wolf and Bernard N. Wolf for Appellant.

Law Office of Cecilia D. Lannon and Cecilia D. Lannon for Respondent.

**OPINION**

**PARRILLI, J.**—Based on a finding of changed circumstances, the trial court modified a spousal support order by immediately lowering the amount of support from $3,750 to $3,000 per month. The court further ordered that on July 1, 1999 (approximately 11 months after the date of the order) support was to automatically "step-down" to $2,000 per month and on January 1, 2001, it would automatically decrease to $1,500 per month. Although wife does not challenge the order to the extent it immediately reduces monthly support payments from $3,750 to $3,000, she contends the court erred by ordering future automatic reductions (or step-downs) because there was no evidence she would have decreased needs on July 1, 1999, and January 1, 2001.

We conclude we must reverse the step-down order because the trial court did not give adequate reasons to support it. In this case, the court would have been justified in immediately decreasing the support payments to $1,500 per month. Arguably, the court chose to phase in the reduction over two and one-half years to give wife time to adjust to the decreased support. Had the trial court expressly stated on the record that this is what it was doing, we would affirm. Unfortunately, although the trial court gave a commendably detailed statement of its decision, it failed to state whether the final step-down figure was justified by the parties' current financial circumstances. Since the court failed to adequately explain the reasons for the step-down, we reverse.

## I

### FACTS

The parties were married for 18 years and separated in 1984. In 1989, the court ordered husband to pay wife nontaxable spousal support in the amount of $3,750 per month. The order further stated the spousal support was to be reduced by a sum equal to one-half wife's actual gross earnings exceeding $500 per month.

In October 1997, husband filed the motion to decrease spousal support that is the subject of this appeal. The court ultimately granted the motion[1] on the ground that wife's financial situation had improved since 1989 while husband's physical and financial condition had deteriorated since that time.

Viewing the record in the light most favorable to husband, as we must,[2] the evidence shows that in 1989 wife was a high school graduate earning $577 ($397 net) per month as a bookkeeper, had total assets of approximately $406,000 (approximately $106,000 liquid)[3] and had investment income of $1 per month. She claimed monthly expenses of $4,167. Thus, the $3,750 in monthly support added to wife's net earnings ($397) essentially equaled her claimed monthly expenses.

By 1997 wife's financial situation had improved considerably. She had graduated from college and was earning approximately $2,000 per month as

---

[1]The court initially denied the motion because it did not find a change in circumstances. However, the court later reconsidered the motion and issued the order that is the subject of this appeal.

[2]In reviewing findings supporting a trial court's exercise of discretion in modifying spousal support, we accept as true all evidence supporting the trial judge's findings, resolve all conflicts in the evidence in favor of the prevailing party and indulge in all legitimate and reasonable inferences to uphold the judgment. (*In re Marriage of Stephenson* (1995) 39 Cal.App.4th 71, 82, fn. 5 [46 Cal.Rptr.2d 8].)

[3]The bulk of wife's assets were her personal residence and $89,000 in an individual retirement account (IRA).

the office manager of the School of Education at St. Mary's College. In addition she had approximately $700 per month in investment income, at least $413,000 in liquid assets,[4] and $191,000 in real estate equity. Thus, from 1989 to 1997 wife's gross income increased from $578 to $2,700 per month and her liquid assets nearly quadrupled in value. Moreover, her gross expenses did not increase significantly. In 1997 she claimed gross expenses of only $4,380 per month.

While wife's fortunes improved in the 1990's, the evidence shows husband suffered financial and health setbacks. Husband is an endodontist[5] who was making approximately $13,882 (gross) per month in private practice in 1989. However, during the 1990's husband, who is in his late 50's, began to suffer from chronic ailments including back, shoulder and arm pain, loss of fine motor control and loss of visual acuity in one eye—all serious impediments to the practice of dentistry. Husband's shoulder condition became so severe that in 1997 he underwent surgery. The surgery was unsuccessful and he is now partially disabled and is unable to engage in the full-time practice of his specialty or the full-time practice of general dentistry. During the six months following his surgery he had gross income of approximately $10,616 per month from a part-time practice in endodontics, a part-time teaching position at the University of California San Francisco dental school, disability payments, and investments. His projected gross income from all sources for 1998 was $92,000, or $7,667 per month.

Although husband has assets worth $521,725, this represents his share of the community estate with his present wife, who recently filed an action to dissolve the marriage. Moreover, he has substantial debts. Husband owes $68,000 on a line of credit, $59,603 to his dental partnership for overhead expenses, and another $27,000 as a mandatory pension plan contribution.

Based on these facts, husband requested that spousal support be terminated or, alternatively, that it be set at $500 per month for six months and then stepped down to $300 per month, plus 10 percent of any gross disability benefits husband might receive for six months, and terminated permanently thereafter.

In its written statement of decision, the court found there had been a material change of circumstances for both parties since 1989. While wife had "completed her education, obtained steady employment, and experienced a significant appreciation in the value of her assets," husband had

---

[4]Wife's liquid assets included $61,000 in nonretirement cash accounts, $343,000 in an IRA, and $9,000 in a retirement account.

[5]The Oxford English Dictionary (2d ed. 1989) defines "endodontics" as the "branch of dentistry that deals with the prevention, diagnosis, and treatment of diseases of the pulp and periapical tissues."

experienced a significant injury which affected his ability to practice his profession and "adversely affect[ed] his income earning ability." The court then conducted a detailed analysis of the factors set out in Family Code section 4320 in deciding the appropriate amount of support.

After completing its Family Code section 4320 analysis, the court concluded wife needed monthly income of $4,139 to "maintain the marital standard of living," but also found that the marital standard of living is no longer the proper measure of support in this case. The court found that, under the current circumstances, husband would continue to have a monthly income in the $7,500 to $10,000 range. The court ordered that, retroactive to the date husband filed his modification motion, he was required to pay $3,000 per month in spousal support *taxable to wife* (and thus deductible to him). The court found "[a]ssuming that [wife] continues to earn approximately $2,000 per month and using her investments to generate an income of $1,000 per month, the order of $3,000 a month taxable spousal support leaves her after taxes with $4,200 per month spendable income."

Without further explanation, the court then stated: "Spousal support at the rate of $3,000 per month shall continue through and including June 30, 1999. Commencing July 1, 1999,[6] monthly spousal support shall be stepped down to $2,000 per month and continue at that rate through and including December, 2000. [¶] Commencing January 1, 2001, monthly spousal support shall be $1,500 per month and continue at that rate until the death of either party, the remarriage of [wife], or further order of the Court." It is this step-down feature that wife objects to on appeal.

## II

### DISCUSSION

 Wife contends there simply is no evidence in the record to support the portion of the trial court's order providing for future step-downs of spousal support.[7] In particular, wife contends the court's step-down order is improper "unless the record documents that the supported spouse will have a

---

[6]The court issued the modification order on July 21, 1998.

[7]We note that, because wife did not request a statement of decision, there is an issue in this case as to whether the trial court was required to issue a statement of decision in the first instance and whether the trial court was required to respond to wife's objections to the statement of decision it did issue. However, the trial court did issue a lengthy and detailed statement which it specifically entitled "Statement of Decision [CRC 232]," but failed to explain the reasons for its step-down order in that statement. In the unusual circumstances of this case, we find that the trial court clearly intended that this written decision be a statement of decision under Code of Civil Procedure section 662 and California Rules of Court, rule

decreased need on the future date in question." In our view, the record does not document that the supported spouse will have decreased needs in the future, and thus we cannot affirm the court's order on that ground.

However, as we explain, it is not necessary in this case for there to be evidence that the supported spouse will have decreased needs in the future. The cases wife cites to support this general rule do not involve modification orders (such as the one in this case) decreasing support. Rather, those cases all involve orders setting the initial level of support or modification orders increasing support payments, coupled with a later step-down provision. (*In re Marriage of Prietsch & Calhoun* (1987) 190 Cal.App.3d 645, 654, 656 [235 Cal.Rptr. 587] [order increasing spousal support];[8] *In re Marriage of Harrison* (1986) 179 Cal.App.3d 1216, 1229-1231 [225 Cal.Rptr. 234] [initial order setting support payments]; *In re Marriage of Martinez* (1984) 156 Cal.App.3d 20, 34, fn. 6 [202 Cal.Rptr. 646], disapproved on other points in *In re Marriage of Fabian* (1986) 41 Cal.3d 440, 451, fn. 13 [224 Cal.Rptr. 333, 715 P.2d 253] and *In re Marriage of Buol* (1985) 39 Cal.3d 751, 763, fn. 10 [218 Cal.Rptr. 31, 705 P.2d 354] [initial order setting support payments]; *In re Marriage of Brantner* (1977) 67 Cal.App.3d 416, 418-419 [136 Cal.Rptr. 635] [initial order setting support payments]; *In re Marriage of Rosan* (1972) 24 Cal.App.3d 885, 888, 891, 895 [101 Cal.Rptr. 295] [initial order setting spousal support payments at only $400 per month found to be so low as to constitute abuse of discretion; additional future automatic reductions also abuse of discretion]; see also *In re Marriage of Stephenson, supra*, 39 Cal.App.4th 71, 82 [in modification case future step-down was improper where the trial court impliedly concluded there was no change in circumstances warranting modification at the time of the motion].)

It is reasonable to require evidence of decreased need to support an automatic step-down provision where the court's primary order is initially

---

232, even though wife did not request one. (See *Slavin v. Borinstein* (1994) 25 Cal.App.4th 713, 718-719 [30 Cal.Rptr.2d 745] [statement of intended decision treated as formal statement of decision even where appellant did not request one because trial court clearly intended that tentative statement be treated as formal statement of decision under rule 232(a)].) Since we conclude the trial court clearly intended to issue a formal statement of decision under rule 232, we look to its written decision to determine whether the court's decision is supported by the facts and the law. (*Slavin v. Borinstein, supra*, 25 Cal.App.4th at pp. 718-719.) Moreover, here appellant specifically objected to the court's statement of decision on the ground it did not specify the factual or legal basis for the step-downs.

[8]The *Prietsch & Calhoun* court specifically observed that "[t]he court here found changes in circumstances had occurred since the prior order, but the changes found by the court justified increasing Prietsch's award rather than decreasing it. What evidence is there, then, to indicate that Prietsch's financial situation will significantly improve over the next nine years?" (190 Cal.App.3d at pp. 656-657.)

setting or later increasing support payments. This is because the court has determined (or increased) the proper amount of support based on the then existing circumstances, and there must be a basis in the record to show the supported spouse's needs will decrease in the future to justify the automatic step-down. (*In re Marriage of Prietsch & Calhoun, supra* 190 Cal.App.3d at pp. 655, 656; *In re Marriage of McCann* (1996) 41 Cal.App.4th 978, 982 [48 Cal.Rptr.2d 864].)

The present case, however, presents a somewhat different situation. In this case the trial court specifically found that changed circumstances justified a decrease in spousal support. (Cf. *In re Marriage of Prietsch & Calhoun, supra,* 190 Cal.App.3d at p. 656 [court found change in circumstances, but the changes justified increasing rather than decreasing support].) In these circumstances, we do not believe it is critical that there be evidence showing the supported spouse's needs will decrease on each step-down date. Rather, in our view, such a step-down order is proper if, at the time of making the order, the court had discretion to decrease support to the ultimate step-down level—here, $1,500 per month, *and the court states that it is implementing the step-down to ease the impact of the decrease on the supported spouse.*

■ The propriety of an order modifying spousal support rests within the trial court's sound discretion. Such an order is proper as long as the court exercises its discretion along legal lines. (*In re Marriage of Biderman* (1992) 5 Cal.App.4th 409, 412-413 [6 Cal.Rptr.2d 791]; Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 1999) ¶ 17:136, p. 17-32.4.)

■ In our view, the evidence would have supported the court's decision to immediately reduce support payments to $1,500 per month.[9] Unfortunately, however, the record does not clearly specify the reasons for the

[9]Wife contends an order setting spousal support significantly below $3,000 per month would be an abuse of discretion in this case because the court specifically found this was the amount wife needed to maintain the "marital standard of living." Although it is true the trial court did make this finding, the court also found that the marital standard of living is no longer the proper measure of support in this case. The court stated: "[Husband] raises the issue as to whether the parties' marital standard of living should be entitled to as much weight in determining spousal support now, some thirteen years after the parties' dissolution, as it was entitled to at the time of the parties' separation. The parties were married for eighteen years and [husband] has been paying spousal support for thirteen years. [Wife] was 43 years old when the parties separated, is 56 years old today, and is still in good health. . . . [¶] The court finds that the marital standard of living is not entitled to the same weight today as it was thirteen years ago as a factor in determining how much spousal support [husband] should pay to [wife]."

Thus, the court clearly expressed its belief it was not necessary (or appropriate) to award wife the amount of support required to allow her to maintain the marital standard of living. The court did not abuse its discretion in reaching this conclusion. Indeed, the Family Code now presumes the supported spouse should be self-supporting within a period equal to

court's step-down order. On the one hand, the court could have found that the appropriate support level at this time was $1,500 per month, but chose to phase in the support reduction to ease the impact on the supported spouse. In our view, this would be wholly proper, and such an order would not require evidence of decreased need in the future. On the other hand, if the court in fact determined that the appropriate amount of support at the time it issued its order was $3,000, then there must be evidence in the record of future decreased need.

In sum, we conclude that where the court finds a change of circumstances justifying a decrease in support payments, the court may allow the decrease to be phased in over time, provided, at the time it issues its order, the court had discretion to reduce the support payment to the final step-down amount. However, the record must clearly indicate that this is what the trial court is doing, so that the reviewing court is not left to guess at the basis for the court's order. In these circumstances, however, the evidence need not show that the supported spouse will have a decreased need on the future step-down date.

Because it is unclear from the record what the trial court's reasons were for ordering a phased-in reduction, we reverse and remand for further proceedings consistent with the views expressed in this opinion.

## III

### DISPOSITION

The order modifying spousal support is reversed. Costs will be shared equally between the parties.

McGuiness, P. J., and Walker, J., concurred.

On November 24, 1999, the opinion was modified to read as printed above.

---

one-half the length of the marriage. (Fam. Code, § 4320, subd. (k); *In re Marriage of Schaffer* (1999) 69 Cal.App.4th 801, 810 [81 Cal.Rptr.2d 797]; *In re Marriage of Schulze* (1997) 60 Cal.App.4th 519, 525 [70 Cal.Rptr.2d 488].)