Filed 12/12/13  Woo v. Woo CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **SUZANNE SIMS WOO,** | |
| **Plaintiff and Respondent,** | **A137279** |
| v. | |
| **ALAN WOO,** | **(San Mateo County** |
| **Defendant and Appellant.** | **Super. Ct. No. FAM0105651)** |

Alan Woo appeals from the trial court's order renewing for five years a domestic violence restraining order against him, arguing the trial court employed the wrong legal standard and the evidence did not support the renewal.  We reject his arguments and affirm.

## BACKGROUND

In 2009, Suzanne Sims Woo sought a domestic violence restraining order against Alan Woo, her then husband and the father of her child.[1]  In February 2010, the parties commenced a multi-day hearing on the restraining order; around the same time, according to Suzanne, the parties' case was "converted" to a dissolution of marriage action.  At the restraining order hearing, Suzanne testified to two incidents involving physical force: In January 2009, Alan grabbed and twisted her forearms; and in August

---

[1]  For convenience, we refer to the parties by their first names; no disrespect is intended.

2009, Alan poked her in the chest with his finger. Alan admitted placing his hands on Suzanne's forearms and brushing his raised finger against her, but denied using force or aggression in either incident. In March 2010, at the conclusion of the hearing, the court issued a two-year restraining order against Alan, which was subsequently modified in nonmaterial respects in June 2010. The restraining order expressly permitted contact related to Alan's visitation rights with their child.

Suzanne subsequently sought permission to relocate with their child to the east coast. A multi-day trial on the issue took place over the course of many months. In May 2012, the trial court issued a tentative decision granting Suzanne leave to relocate to the east coast and awarding Alan certain visitation rights.

Meanwhile, in March 2012, Suzanne filed a request to renew the restraining order against Alan. Suzanne did not contend Alan had used physical force against her since the issuance of the original order. Instead, she cited the ongoing and contentious litigation over her requested relocation and certain behavior she characterized as "bullying." A hearing on the renewal request was held before the same judge who presided over the hearing on the initial restraining order and the relocation trial. As part of the hearing, the court took judicial notice of the testimony and exhibits from the hearing on the initial restraining order.

In June 2012, after hearing testimony and argument, the trial court announced from the bench its decision to grant Suzanne's renewal request. The court found none "of the [new] contact that was alleged to be abusive." However, it relied upon evidence from the hearing on the original restraining order that the court "did find to constitute domestic violence including the finger hitting [Suzanne] in the chest and the twisting of the arms." The court also considered the current circumstances, including that "[t]here is a move away order contemplated." The court concluded, "[Suzanne's] fear in this case is well beyond that which you would expect in a case given the incidents that have occurred; however, the incidents that the court found were such that a reasonable person would be concerned, would have reasonable apprehension that given the situation occurring, given the situation of arguing in the future that, yeah, that might occur again."

2

The restraining order was renewed for five years.[2] However, the court specifically noted Alan "may move for a modification for termination of the restraining order once the move-away is either finalized or [Suzanne] decides not to move away."

DISCUSSION

"A trial court should renew [a domestic violence restraining order], if, and only if, it finds by a preponderance of the evidence that the protected party entertains a 'reasonable apprehension' of future abuse," meaning "the evidence demonstrates it is more probable than not there is a sufficient risk of future abuse to find the protected party's apprehension is genuine and reasonable." (*Ritchie v. Konrad* (2004) 115 Cal.App.4th 1275, 1290 (*Ritchie*).) Such a finding may be made "without a showing of any further abuse since the issuance of the original order." (Fam. Code, § 6345, subd. (a).) "[T]he trial judge ordinarily should consider the evidence and findings on which [the] initial order was based in appraising the risk of future abuse should the existing order expire." (*Ritchie, supra,* at p. 1290.) Indeed, "the underlying findings and facts supporting that order often will be enough in themselves to provide the necessary proof to satisfy [the reasonable apprehension of future abuse] test." (*Id.* at p. 1291.) "Also potentially relevant are any significant changes in the circumstances surrounding the events justifying the initial protective order. For instance, have the restrained and protected parties moved on with their lives so far that the opportunity and likelihood of future abuse has diminished to the degree they no longer support a renewal of the order? Or have there been no significant changes or even perhaps changes that enhance the opportunity and possibility of future abuse?" (*Ibid.*) Finally, the burdens the restraining order imposes on the restrained party are not relevant "where the protected party has a 'reasonable apprehension' of future *physical* abuse," but may become relevant if the

---

[2]  The trial court properly found it lacked discretion under the governing statute to renew the order for less than five years. (See Fam. Code, § 6345, subd. (a) [domestic violence restraining orders "may be renewed . . . either for five years or permanently"]; *Avalos v. Perez* (2011) 196 Cal.App.4th 773, 777.)

3

threat is of "lesser forms of abuse — unwanted telephone calls or mail, for example." (*Id.* at p. 1292.)

We review the trial court's order renewing the restraining order "under an abuse of discretion standard, to determine ' "whether the trial court exceeded the bounds of reason. . . ." ' [Citation.]" (*Lister v. Bowen* (2013) 215 Cal.App.4th 319, 333 (*Lister*).)

As an initial matter, Alan contends the trial court failed to issue a statement of decision. If a "trial is concluded . . . in less than eight hours over more than one day," "the request [for a statement of decision] must be made prior to the submission of the matter for decision." (Code Civ. Proc., § 632.) The hearing on the renewal request lasted less than eight hours over the course of two days. (See *In re Marriage of Gray* (2002) 103 Cal.App.4th 974, 980 [trial time for purposes of Civ. Proc. Code, § 632 "means the time that the court is in session, in open court, and also includes morning and afternoon recesses when the parties remain at the courthouse. It does not include time spent by the judge off the bench without the parties present — lunch, for example — except for such routine recesses as occur during the day"].) The matter was submitted on June 18, 2012 (see Cal. Rules of Court, Rule 2.900, subd. (a)(2)) and the order issued on June 19, but Alan did not request a statement of decision until June 27. As his request was untimely, the trial court had no obligation to issue a statement of decision. (*In re Marriage of Gray,* at p. 980.)

In any event, the trial court did announce the reasons for its decision on the record before the parties in what it likely intended to be the statement of decision. (See Code Civ. Proc., § 632 ["when the trial is concluded . . . in less than 8 hours over more than one day, the statement of decision may be made orally on the record in the presence of the parties"].) As explained below, we affirm even assuming this constitutes a statement of decision to which we look "to determine whether the court's decision is supported by the facts and the law." (*In re Marriage of Rising* (1999) 76 Cal.App.4th 472, 477, fn. 7 [considering document "that the trial court clearly intended . . . be a statement of decision under Code of Civil Procedure section 662"].)

4

Alan next contends the trial court improperly used a subjective rather than objective standard. To the contrary, the trial court explicitly stated the evidence was "such that a *reasonable person* would be concerned, would have *reasonable apprehension* that [the physical abuse] might occur again." (Italics added.) That the trial court also found Suzanne's "fear in this case is well beyond that which you would expect" is not in conflict with this finding. For example, Suzanne implied she feared a fatal attack from Alan. Even if the trial court could find such a fear was not objectively reasonable, a fear of nonfatal physical abuse was.

Finally, Alan argues the evidence does not support the trial court's conclusion that Suzanne had a reasonable apprehension of future abuse. In so concluding, the trial court relied on the evidence underlying the initial restraining order, specifically, "facts I did find to constitute domestic violence including the finger hitting [Suzanne] in the chest and the twisting of the arms." Alan argues no statement of decision issued after the *initial* restraining order hearing, despite Alan's timely request. Any error in failing to issue a statement of decision has been forfeited as Alan did not appeal the original restraining order. (8 Witkin, Cal. Procedure (5th ed. 2008) Attack on Judgment in Trial Court, § 10, p. 593 ["where prior orders are independently appealable and become final by lapse of time, an attack on them in an appeal from the judgment or from some later order is collateral"].) The absence of a statement of decision in the initial order did not preclude the trial court from reviewing the *evidence* underlying the initial order. The trial court's consideration of this evidence was proper. (*Ritchie, supra,* 115 Cal.App.4th at p. 1290.)

The trial court also properly considered the current circumstances of the parties. The ongoing litigation involving Suzanne's relocation request placed the parties in adversarial positions. The trial court's statement that it would consider a request by Alan to terminate the restraining order once Suzanne's move was either finalized or canceled indicates an understanding that this litigation was particularly contentious and increased the possibility of heated arguments. The trial court considered this a "change[] that

5

enhance[d] the opportunity and possibility of future abuse," an appropriate consideration in assessing a renewal request. (*Ritchie, supra,* 115 Cal.App.4th at p. 1291.)

The trial court found no additional harassment had occurred since the initial restraining order issued, but nonetheless concluded Suzanne had a reasonable apprehension of future abuse. In light of the trial court's finding of physical abuse from the hearing on the initial restraining order and the ongoing litigation over Suzanne's relocation request, we cannot say the trial court's conclusion " 'exceeded the bounds of reason.' " (*Lister, supra,* 215 Cal.App.4th at p. 333.)[3]

## DISPOSITION

The judgment is affirmed. Suzanne is awarded her costs on appeal.

---

[3] Because we find the trial court did not abuse of its discretion, we need not resolve Suzanne's contention that the "reasonable person" standard properly considers a reasonable domestic violence victim.