Filed 12/22/20  Brown v. Cal. Dept. of Corrections and Rehabilitation CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| TERESA BROWN, | C089340 |
| Plaintiff and Appellant, | (Super. Ct. No. 34201500176321) |
| v. | |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, | |
| Defendant and Respondent. | |

Plaintiff Teresa Brown is a Seventh-day Adventist who observes the Sabbath from sundown Friday through sundown Saturday.  Defendant California Department of Corrections and Rehabilitation (CDCR) found her ineligible for employment as a correctional officer based on her unwillingness to work during this time period.  Brown appeals from a judgment entered after a bench trial on her claim for failure to provide

1

accommodation under Government Code section 12940, subdivision (*l*)(1).[1]  We conclude the trial court erred by deciding Brown's claim based on the bona fide occupational qualification defense, which was unsupported by the evidence.  We will reverse the judgment and remand for further proceedings.

## I.  BACKGROUND

In California, all candidates for employment "in the state civil service shall . . . conform to the conditions of work characteristic of the employment . . . .  The [State Personnel Board] may prescribe . . . qualifications for individual classes and such shall be made a part of the class specifications."  (Cal. Code Regs., tit. 2, § 172.)  The State Personnel Board specification for the correctional officer class explains that it is an entry level and training class that "provide[s] the public protection by enforcing State and Federal laws and administrative regulations while supervising the conduct of inmates or parolees of a State correctional facility or camp."  "In carrying out the primary duty of public protection, the Correctional Officer class performs duties that vary among institutions and among designated posts within an institution due to varying security levels of inmates, design of correctional facilities, geographical location, watch assignment, and the number of inmates.  Assignments for this class include duty in towers, housing units, reception centers, kitchens, outside crew supervision, search and escort, control booths, yard, gun posts, and transportation."  Under "Special Personal Characteristics," the specification adds a "willingness to work day, evening, or night shifts, weekends, and holidays, and to report for duty at any time emergencies arise."  As part of the application process to become a correctional officer, Brown answered various questions pertaining to this aspect of the class specification.  Brown indicated a "[w]illingness to work weekend shifts (e.g., Saturday, Sunday, and/or Holidays) in

---

[1]  Undesignated statutory references are to the Government Code.

2

emergency situations, on an as-needed basis, and/or on a regular rotating basis," a "[w]illingness to work required overtime," and a "willingness to work on-call hours as required." On a separate form, she checked a box indicating she was *not* "freely willing to work split shifts, nights, weekends and holidays." She submitted supplemental information to this answer explaining that, because of her faith, she could not work Friday after sunset or Saturday before sunset. In a subsequent interview conducted by an investigator with CDCR's Background Investigation Unit, Brown reiterated this limitation and stated she could work at any other time.

The interviewer reported Brown's unwillingness to work from sundown Friday to sundown Saturday to her supervisor. The supervisor considered the State Personal Board's class specification, the memorandum of understanding between the California Correctional Peace Officers Association and the State, and CDCR's apprenticeship program in exploring whether CDCR could grant Brown's accommodation request, and ultimately decided to reject Brown's application based on her unwillingness "to work day, evening, or night shifts, weekends and holidays[,] and to report for duty at any time emergencies arise" as specified by the State Personnel Board. CDCR sent Brown a letter explaining that due to her inability to meet this criteria, her name had been removed from the list of eligible candidates.

Brown subsequently filed a complaint alleging two causes of action against CDCR under the California Fair Employment and Housing Act: (1) religious discrimination under section 12940, subdivision (a); and (2) failure to provide accommodation under section 12940, subdivision (*l*)(1). The first cause of action did not survive summary adjudication.

After a bench trial on Brown's second cause of action, the trial court found CDCR was entitled to judgment in its favor. In its statement of decision, the court explained that its ruling was based on the "bona fide occupational qualification" defense. The court concluded that "the Correctional Officer availability standards, considered within the

3

unique context of the mission and responsibilities of the California Department of Corrections and the state prison system, constitute bona fide occupational qualifications for the Correctional Officer position." The court explained that the phrase "Correctional Officer availability standards" "describe in summary form the various published availability-for-work standards established by the State Personnel Board and CDCR." The standards include "the willingness to work day, evening, swing or night shifts, weekends, (e.g., Saturday, Sunday, and/or Holidays); to report for duty at any time emergencies arise, to report for duty on an as-needed basis or for on-call hours as required, and/or to work required overtime as assigned." The court found "the evidence established that the availability standards were essential to the safe and efficient operation of the prisons; they go to the 'essence' or 'central mission' of this unique employment. The evidence established that a correctional officer's willingness to report when called and to remain on duty when required to do so directly affects the safety and security of Correctional Officers, prison staff, prison inmates and the public." The court concluded Brown was required to establish that she could meet the availability standards, and her failure to do so was fatal to her remaining cause of action.

Additionally, the court noted Brown had otherwise established a prima facie case for accommodation, but the applicability of the bona fide occupational qualification defense eliminated any need to address whether CDCR adequately explored reasonable means of accommodating Brown's Sabbath observance.

Judgment was entered in favor of CDCR, and Brown filed a timely appeal.

## II. DISCUSSION

### A    Standard of Review

"The statement of decision provides the trial court's reasoning on disputed issues and is our touchstone to determine whether or not the trial court's decision is supported by the facts and the law." (*Slavin v. Borinstein* (1994) 25 Cal.App.4th 713, 718.) "In reviewing a judgment based upon a statement of decision following a bench trial, we

4

review questions of law de novo. [Citation.] We apply a substantial evidence standard of review to the trial court's findings of fact. [Citation.] Under this deferential standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings." (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.)

B.      *Bona Fide Occupational Qualification Defense*

Section 12940 provides, in relevant part: "It is an unlawful employment practice, *unless based upon a bona fide occupational qualification* . . . [¶] . . . [¶] (*l*)(1) For an employer or other entity covered by this part to refuse to hire or employ a person or to refuse to select a person for a training program leading to employment or to discharge a person from employment or from a training program leading to employment . . . because of a conflict between the person's religious belief or observance and any employment requirement, unless the employer or other entity covered by this part demonstrates that it has explored any available reasonable alternative means of accommodating the religious belief or observance, including the possibilities of excusing the person from those duties that conflict with the person's religious belief or observance or permitting those duties to be performed at another time or by another person, but is unable to reasonably accommodate the religious belief or observance without undue hardship, as defined in subdivision (u) of Section 12926, on the conduct of the business of the employer or other entity covered by this part. Religious belief or observance, as used in this section, includes, but is not limited to, observance of a Sabbath or other religious holy day or days . . . ."[2] (Italics added.)

---

[2] Section 12926, subdivision (u) defines "undue hardship" as "an action requiring significant difficulty or expense, when considered in light of the following factors: [¶] (1) The nature and cost of the accommodation needed. [¶] (2) The overall financial

On appeal, Brown essentially contends the trial court erred in deciding this case under the prefatory part of section 12940 permitting discrimination based upon a bona fide occupational qualification rather than engaging in the analysis set forth in subdivision (*l*)(1). Specifically, Brown argues the bona fide occupational qualification defense only applies to deliberate discrimination against a protected class. Even if the defense could theoretically apply to a facially neutral job rule, Brown contends the trial court's decision omitted requirements for establishing the defense, and CDCR's evidence was insufficient to meet the requirements. Further, Brown contends CDCR waived the affirmative defense by failing to plead it.

We agree the trial court erred in resolving this case based on the bona fide occupational qualification defense. " '[B]ona fide occupational qualification' is a term of art with a distinct meaning" from occupational qualifications. (*Nadaf-Rahrov v. Neiman Marcus Group, Inc*. (2008) 166 Cal.App.4th 952, 975, fn. 10.) California regulations define the affirmative defense as applying "[w]here an employer or other covered entity has a practice that on its face excludes an entire group of individuals on a basis enumerated in the Act (e.g., all women or all individuals with lower back defects)" and "prove[s] that the practice is justified because all or substantially all of the excluded individuals are unable to safely and efficiently perform the job in question and because the essence of the business operation would otherwise be undermined." (Cal. Code Regs., tit. 2, § 11010, subd. (a); accord *West v. Bechtel Corp*. (2002) 96 Cal.App.4th 966, 983-984.) CDCR notes *Johnson Controls, Inc. v. Fair Employment & Housing Com.*

_____

resources of the facilities involved in the provision of the reasonable accommodations, the number of persons employed at the facility, and the effect on expenses and resources or the impact otherwise of these accommodations upon the operation of the facility. [¶] (3) The overall financial resources of the covered entity, the overall size of the business of a covered entity with respect to the number of employees, and the number, type, and location of its facilities. [¶] (4) The type of operations, including the composition, structure, and functions of the workforce of the entity. [¶] (5) The geographic separateness or administrative or fiscal relationship of the facility or facilities."

6

(1990) 218 Cal.App.3d 517, 543, fn. 10 offers support for the proposition that a facially neutral policy is also subject to a bona fide occupational qualification justification. That theoretical support was limited to facially neutral policies that are the result of intentional discrimination. (*Ibid*.; see also *Harriss v. Pan American World Airways, Inc*. (9th Cir. 1980) 649 F.2d 670, 674, fn. 2 [bona fide occupational qualification "is a warrant for affirmative deliberate discrimination while a [Business Necessity Defense] is a defense to the prima facie case made when an apparently neutral employment practice is shown to have a discriminatory effect"].) Nonetheless, even if we assume that a facially neutral policy may be a bona fide occupational qualification without any evidence of intentional discrimination, as we will discuss next, the elements of the defense demonstrate their inapplicability to these proceedings.

To establish a defense based on its use of a bona fide occupational qualification, an employer " 'must prove that the practice is justified because all or substantially all of the excluded individuals are unable to safely and efficiently perform the job in question and because the essence of the business operation would otherwise be undermined.' " (*West v. Bechtel Corp*., *supra*, 96 Cal.App.4th at p. 984.) The trial court addressed the latter portion of this standard by finding "that the evidence established that the availability standards were essential to the safe and efficient operation of the prisons; they go to the 'essence' or 'central mission' of this unique employment." But a failure to submit evidence to support a finding that all or substantially all of those in the excluded class are unable to perform the job duties safely and efficiently is fatal to a bona fide occupational qualification defense. (*Sterling Transit Co., Inc. v. Fair Employment Practice Com*. (1981) 121 Cal.App.3d 791, 797.) To the extent the trial court concluded CDCR denies the application of individuals who state they will not meet the availability standards, we know nothing about this class of individuals beyond the fact it was determined to include Brown. Further, the evidence demonstrates CDCR employs correctional officers who are at times unavailable or unwilling to work. On this record,

7

the evidence does not establish that the availability standard as construed by CDCR and the court fits into the parameters of a bona fide occupational qualification analysis. Moreover, even when the bona fide occupational qualification analysis applies, "the employer must also 'bear the burden of proving that because of the nature of the operation of the business they could not rearrange job responsibilities . . .' in order to reduce the [bona fide occupational qualification] necessity." (*Bohemian Club v. Fair Employment & Housing Com.* (1986) 187 Cal.App.3d 1, 19.) In other words, a bona fide occupational qualification analysis does not obviate the need for any inquiry into accommodation or the appropriateness of excluding an entire class of individuals. Here, the evidence presented by CDCR demonstrates the difficulty of accommodating a correctional officer's unavailability for work varies with the circumstances, and some unavailability is accommodated. CDCR's evidence was not directed at demonstrating the difficulty of accommodating *any* unavailability, but the difficulty of accommodating the unavailability presented by Brown. The trial court did not engage with the question of accommodation at all, concluding that "the fact that the Corrections Officer availability standards are bona fide occupational qualifications removes the question of accommodation from consideration under section 12940[, subdivision ](*l*)." The court's application of the bona fide occupational qualification defense to the evidence before it was error.[3]

C.    *Section 12940, subdivision (l)(1)*

Perhaps recognizing the inapplicability of the bona fide occupational qualification defense to its evidence, CDCR now urges "this case is better resolved as an inability to

---

[3] In light of our conclusion, we need not address Brown's waiver argument. Nonetheless, we note the trial court's conclusion that CDCR adequately raised the bona fide occupational qualification defense in its answer also appears to be based on a misunderstanding of the elements of the affirmative defense.

8

reasonably accommodate or undue hardship because its Availability Standards do not facially exclude any religious observance." We concur, but we disagree with CDCR's suggestion that we may affirm based on theories and findings the trial court expressly did not reach. "When a statement of decision does not resolve a controverted issue . . . it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue." (Code Civ. Proc., § 634; see also *Reid v. Moskovitz* (1989) 208 Cal.App.3d 29, 32 [even without a statement of decision, appellate court cannot imply findings the trial court expressly refused to make].) Here, the court explained that because Brown "did not possess the required bona fide occupational qualifications," it was not "called upon to determine [whether] the evidence established the initiation of a particularized inquiry as to whether [Brown]'s Sabbath observance could somehow be accommodated, and whether CDCR had carried its resulting burden to demonstrate that it explored any available reasonable means of accommodating the conflict between [Brown]'s Sabbath observance and the employment requirement that she be willing to work at any time, including nights, weekends, mandatory overtime, and so forth." The trial court's discussion of this unresolved issue further reflects that the ultimate outcome of this factual question is not a foregone conclusion. Likewise, it is clear from the trial court's passing reference to the business necessity defense and its applicability in disparate *impact* cases, that the court was not relying on this defense or concluding that it could be applicable to this case. (See *Johnson Controls, Inc. v. Fair Employment & Housing Com.*, *supra*, 218 Cal.App.3d at p. 543, fn. 10 ["where a facially neutral policy yields a disparate *impact* upon the protected group," the policy is subject to the business necessity defense].) Thus, we must reverse the judgment and remand for the trial court to analyze the evidence in the manner that CDCR concedes is more appropriate—under section 12940, subdivision (*l*)(1).

### III.  DISPOSITION

The judgment is reversed and the cause is remanded to the superior court for further proceedings consistent with the views stated herein.  Teresa Brown shall recover her costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/S/

_____

RENNER, J.

We concur:

/S/

_____

DUARTE, Acting P. J.

/S/

_____

HOCH, J.

10