Filed 9/27/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re Marriage of KEVIN J. and CATHY BERMAN. | B272324 |
| | (Los Angeles County Super. Ct. No. BD426693) |
| KEVIN J. BERMAN, Appellant, v. CATHY BERMAN, Respondent. | |

APPEAL from orders of the Superior Court of Los Angeles County, Laura L. Seigle, Judge.  Affirmed.

Buter, Buzard, Fishbein & Royce and Gary Fishbein for Appellant.

Law Offices of Robert L. Schibel and Robert L. Schibel for Respondent.

\* \* \* \* \* \*

Kevin Berman appeals from an order modifying the amount of spousal support he is obligated to pay his ex-wife, respondent Cathy Berman, and a subsequent order denying his motion for a new trial, his motion to vacate, and his motion for reconsideration. Kevin[1] requested termination of spousal support after he retired at age 65 and transferred his business to his current wife for no consideration. The trial court found that Kevin had transferred the business in bad faith in order to avoid his support obligations and ruled that income from the business could continue to be imputed to Kevin for purposes of spousal support. We hold that the trial court did not abuse its discretion and affirm the orders.

## BACKGROUND[2]

### 1. Prior Proceedings

Kevin and Cathy married in February 1974. The marriage was dissolved in December 2006. On March 6, 2009, the court ordered that Kevin pay $9,500 per month in spousal support.

On May 30, 2013, Kevin and Cathy stipulated to an order lowering the monthly support amount to $4,000.

### 2. Request to Modify Spousal Support

On September 25, 2015, Kevin filed a request for an order terminating further spousal support. He submitted a series of declarations in support of his request. In these declarations, he

---

[1]     "As is common in family law proceedings, we use the parties' first names for purposes of clarity." (*In re Marriage of Kochan* (2011) 193 Cal.App.4th 420, 422, fn. 1 (*Kochan*).)

[2]     For brevity's sake, the facts, including the summaries of the parties' papers below, are limited to those relevant to the issues on appeal. We focus on the evidence submitted by Kevin, as that was the primary basis for the trial court's rulings.

2

explained that he had turned 65 in July 2015 and decided to retire, handing his business, Berman & Ely, a private investigation and security firm, over to his current wife. He stated that his wife now ran the business "full time," and he was "not involved in the operation and do[es] not work there." Kevin stated, "[M]y wife . . . has learned the trade and is running the business."

A "Transmutation Agreement" executed June 29, 2015, indicated that Berman & Ely had been transferred from Kevin to his current wife and transmuted to her separate property. Kevin received no consideration for the transfer.

Kevin submitted income and expense declarations showing an average monthly salary before retirement of $3,675. He also listed an average monthly disability payment of $2,659 from his earlier career as a police officer. In an attachment to one of the income and expense declarations, he stated that before his retirement he had "received gross income from Berman & Ely totaling approximately $280,000 from January, 2014 through June 30, 2015." Kevin's 2014 income tax return, submitted by Cathy, listed $50,113 in salary and $220,442 in business income from Berman & Ely.

The trial court held a hearing in which it expressed doubt that the law permitted Kevin to divest himself of an income-producing asset and thereby terminate spousal support obligations. The court continued the hearing so the parties could provide additional legal briefing on the issue.

Kevin filed a memorandum of points and authorities arguing that under *In re Marriage of Reynolds* (1998) 63 Cal.App.4th 1373 (*Reynolds*) he was entitled to retire at age 65 and the court could not impute any income to him from the

business he had transferred to his wife. Kevin asserted there was no evidence of bad faith—he did not transfer Berman & Ely "in order to shirk his spousal support obligations," but to leave the business "in capable hands" upon his retirement.

### 3. The Spousal Support Order

The court heard further argument on February 17, 2016. The court found that Kevin's retirement constituted a significant change of circumstances since the last spousal support order, given that he would no longer be receiving the $50,000 in salary reported on his 2014 tax return. But the court stated that it would nonetheless impute business income to Kevin from Berman & Ely, "not as salary and wages, but as income produced from an asset to [Kevin], that he would have continued to have if he had not transferred it for no consideration to his current wife." The court found no evidence to explain why Kevin had not received consideration for the transfer, and the court inferred that the transfer was done at least in part to allow Kevin to claim a reduced income. The court stated that the transfer "d[id] not look like a transfer in good faith."

Kevin's counsel argued there was no evidence "that the business would continue to generate income as it did if [Kevin] were still working in the business." The court responded that it was Kevin's burden to prove otherwise, and given that Kevin had said in his papers "that his wife is running the business capably," "there is every reason to believe that [the business] will continue to generate income as an asset."

After considering the statutory factors for setting spousal support under Family Code section 4320,[3] the court reduced

---

[3]     All further statutory references are to the Family Code.

spousal support "slightly" by $500 per month, to reflect Kevin's loss of $50,000 in salary upon retirement.

## 4. Postorder Motions

Kevin filed a motion for a new trial, a motion to vacate, and a motion to reconsider, all based on materially similar arguments. He argued that Berman & Ely's business revenue in 2014 was the result of his efforts and that the business could not be expected to earn the same level of income if he was not working there. Thus, he asserted, the court was essentially forcing him to return to work to comply with its order. Kevin disputed claims by Cathy regarding "the nature and success of Berman & Ely" and stated that "[d]uring the last few years I was operating the business, there was at best one retired police office[r] working security and there was no investigation unit." He also argued that the court's ruling made it impossible to further modify the spousal support order because he would be unable to show a change of circumstances based on a business he no longer owned.

The court denied the three motions following a hearing on April 13, 2016. The court found no evidence that Kevin could not have both retired and remained an owner of the business, thereby continuing to receive income. The court reiterated its finding that the evidence suggested that the business was continuing without Kevin's "personal business or labor" with his current wife "own[ing] the profits." The court stated, "The most reasonable inference from the evidence that was presented is that [Kevin] gave up his ownership interest, with the attendant right to receive the profits of the business[,] in order to avoid paying spousal support; and that he continues to receive the benefits of the business income, the business profits, via his wife's

5

ownership of the business." The court, quoting *In re Marriage of Dick* (1993) 15 Cal.App.4th 144, 164-165 (*Dick*), stated that Kevin's wife could "be expected to act at his behest," and therefore Kevin was "capable of complying with the [spousal support] order." Similarly, if Kevin wished to seek to modify the order in the future, he could access the necessary records to show a decrease in business income.

Kevin timely appealed.

## DISCUSSION

Kevin argues that the trial court abused its discretion by imputing income to him from the business he had transferred to his wife upon retirement. We disagree.

## 1. Standard of Review

"The modification of a spousal support order is reviewed on appeal for abuse of discretion. In exercising its discretion, the trial court must follow established legal principles and base its findings on substantial evidence. If the trial court conforms to these requirements its order will be upheld whether or not the appellate court agrees with it or would make the same order if it were a trial court." (*In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 47, fn. omitted.)

When reviewing for substantial evidence, "all conflicts must be resolved in favor of the prevailing party, and all legitimate and reasonable inferences must be indulged in order to uphold the trial court's finding. [Citation.] In that regard, it is well established that the trial court weighs the evidence and determines issues of credibility and these determinations and assessments are binding and conclusive on the appellate court." (*In re Marriage of Hill & Dittmer* (2011) 202 Cal.App.4th 1046, 1051-1052 (*Hill & Ditmer*).)

6

## 2. Applicable Law

A court may modify a spousal support order upon a showing of a material change of circumstances since the last order. (*In re Marriage of Olson* (1993) 14 Cal.App.4th 1, 9.) The party seeking the modification bears the burden of establishing a material change. (*In re Marriage of Stephenson* (1995) 39 Cal.App.4th 71, 78 (*Stephenson*).) "In determining whether a change of circumstances has occurred, the trial court is required to reconsider the same standards and criteria set forth in . . . Family Code section 4320 it considered in making the initial long-term order at the time of judgment and any subsequent modification order." (*Id.* at pp. 77-78, fn. omitted.) These criteria include, among other things, the earning capacity of each party, the ability of the supporting party to pay spousal support, the needs of each party, the age and health of the parties, the balance of hardships to the parties, and any other factors the court determines are just and equitable. (§ 4320.) In evaluating the supporting party's ability to pay support, the court may take into account not only income actually earned, but also unearned income and assets. (§ 4320, subd. (c); *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 305.)

Even upon proof of a change of circumstances, "modification is not necessarily mandated given the court's obligation to reconsider the statutory standard . . . ." (*Stephenson, supra*, 39 Cal.App.4th at p. 78.) The trial court has broad discretion in setting or modifying spousal support, and among other things may take into account evidence of bad faith on the part of the supporting party in meeting his or her support obligations. Such evidence may justify holding a supporting party to those obligations even if the acts taken in bad faith have

7

ostensibly reduced the supporting party's income. (See *Kochan, supra*, 193 Cal.App.4th at p. 428 [if supporting party has made "a deliberate attempt to depress income" in order "to avoid a support obligation," the court may base the support amount on the supporting party's earning capacity rather than actual income].)[4] For example, the Court of Appeal in *In re Marriage of Sinks* (1988) 204 Cal.App.3d 586 (*Sinks*) held that the trial court properly denied a request to modify when it found that the supporting party had retired early at age 62 specifically to avoid paying spousal support: "Because the law does not sanction the shirking of familial responsibilities, [the supporting party], having chosen to retire at age 62 for improper motives, has the option of finding work elsewhere or using his separate property to meet his support responsibility." (*Id.* at p. 594.)

Similarly, if a court finds that a supporting party has structured ownership of his or her assets to avoid his or her financial obligations, the court may "look past the apparent form of ownership . . . to determine the extent of [the supporting party's] true interest in them and the availability of those assets in assessing [the supporting party's] ability to pay." (*Dick, supra*, 15 Cal.App.4th at p. 162;[5] see *Kohn v. Kohn* (1950) 95 Cal.App.2d

---

[4]     There is no requirement, however, that a court find bad faith before basing a support order on earning capacity. (*Kochan, supra*, 193 Cal.App.4th at p. 428.)

[5]     *Dick* concerned an order granting temporary spousal support rather than an order modifying a grant of permanent spousal support, as is the case here. (*Dick, supra*, 15 Cal.App.4th at p. 158.) Although there are differences between temporary and permanent spousal support orders (see *id.* at p. 166), both require the court to evaluate the supporting party's ability to pay.

8

708, 717-720 [corporate assets deemed to belong to husband when corporation was formed in part to avoid spousal support obligations].) In *Dick*, the Court of Appeal found "ample evidence to support the trial court's finding of husband's ability to pay based on assets and nonsalary income, not in husband's name but under his control." (*Dick, supra*, at p. 161.) The "crucial finding" by the trial court was that the husband had created " 'a labyrinth of trusts and corporations designed by him . . . to shield and protect [him] from creditors.' " (*Ibid*.) Among other things, the husband "rid himself of all his United States assets by 'selling' them to his former secretary . . . and two business associates . . . . No cash changed hands." (*Id*. at p. 164.) The court noted that all of the husband's transfers "involve[d] people to whom he is related or who are or have been his employees or business associates, and who could, therefore, be expected to act at his behest. It can be inferred from this evidence that husband is capable of complying with the order for payment of support and attorney fees." (*Id*. at pp. 164-165.)

### 3. Analysis

Based on the applicable law, we find no abuse of discretion in the trial court's ruling. Central to that ruling was the court's finding that Kevin had transferred Berman & Ely to his current wife in bad faith with the goal of avoiding his support obligations. This finding is supported by substantial evidence. It is undisputed that Kevin transferred to his wife an asset that had generated $220,000 in business income the previous year. It is undisputed that there was no consideration for the transfer of this apparently valuable asset. As the court noted, Kevin

---

(*Id*. at p. 159; § 4320, subd. (c).) *Dick*'s analysis of that factor is therefore relevant and instructive in both contexts.

presented no evidence to explain the lack of consideration for the transfer. The court could reasonably infer that Kevin had arranged this transaction to eliminate his business income on paper while still enjoying its benefits through his wife's ownership. Similarly, the court could infer that Kevin's wife "could . . . be expected to act at his behest" (*Dick, supra*, 15 Cal.App.4th at pp. 164-165), and therefore Kevin had the ability to pay spousal support despite the transfer of his business.[6]

The only evidence that the transfer was in good faith came from Kevin's declarations and papers below, in which he insisted that he did not transfer the business to avoid his support obligations. The court did not believe him, and that credibility determination is binding on this court. (*Hill & Dittmer, supra*, 202 Cal.App.4th at pp. 1051-1052; see *In re Marriage of Meegan* (1992) 11 Cal.App.4th 156, 162 [determination of good faith is a credibility determination within the trial court's discretion].) Although Kevin argues that, unlike in *Dick*, there was no evidence that he continued to have access to the business, the burden was on him, as the party seeking modification, to prove a material change of circumstances. (*Stephenson, supra*, 39 Cal.App.4th at p. 78.) Here, the court found that the "material change" of the business transfer was a sham and therefore could not justify further modification of the spousal support order.[7]

---

[6] We do not decide whether the court could hold Kevin to his support obligations had it found that as a result of a bad faith transaction he did *not* have the ability to pay further spousal support.

[7] Kevin further argues that *Dick* is inapplicable because there the husband transferred assets to individuals not qualified to manage them without his involvement, whereas Kevin's wife

10

Kevin raises a number of arguments that we address in turn.

### *a.* Reynolds

Kevin argues that the trial court's order violates *Reynolds, supra*, 63 Cal.App.4th 1373, which held that "no one may be compelled to work after the usual retirement age of 65 in order to pay the same level of spousal support as when he was employed." (*Id.* at p. 1378.) Although the trial court lowered the spousal support amount to reflect Kevin's loss of $50,000 in salary upon retirement, Kevin asserts the court should have recognized the loss in business income as well. Kevin argues that unlike income from an asset like a stock portfolio, which requires little or no involvement from the owner, Berman & Ely's business income "was a function of Kevin's efforts," and "Kevin was the business, and its income was derived from Kevin's services." Kevin's position appears to be that absent his labor, there is no business income, or at least that the income is greatly reduced; therefore, his retirement effectively terminated that business income just as it terminated his salary, leaving nothing for spousal support. He argues that to continue to base spousal support on that business income going forward will force Kevin to continue to work past age 65, which *Reynolds* prohibits.

---

was qualified to run Berman & Ely without him. This is unpersuasive. *Dick* says nothing about the qualifications of the people to whom the husband transferred the assets and the court did not rely on those qualifications in its reasoning. The concern in *Dick* was that the people to whom the assets were transferred were relatives or business associates of the husband who could be relied upon to act for his benefit. (*Dick, supra*, 15 Cal.App.4th at pp. 164-165.) The court in this case could reasonably infer that Kevin's wife, similarly, could be relied upon to act for his benefit.

11

Again, the only evidence in support of Kevin's position came from his own declarations, which the court in its discretion rejected.[8] No business records or other evidence were offered to establish how much of Berman & Ely's income was attributable to Kevin's labor as opposed to other sources, and what potential (or lack thereof) the business had to earn revenue without Kevin's involvement. Kevin's counsel in fact acknowledged there were employees besides Kevin, which raises questions as to whether the income was derived solely from Kevin's services, especially in the absence of any further information about those employees. Given the lack of evidence, the court reasonably concluded that Kevin had failed to establish the relationship between the business income and his labor and therefore failed to establish that he would only be able to maintain that income by returning to work. The court's ruling did not violate the rule from *Reynolds*.

Kevin argues that the court should have treated the transfer to his wife no differently than if Kevin had closed the business, which, Kevin claims, *Reynolds* permitted him to do. Of course, had Kevin closed the business, there would be no concern

---

[8] We are not persuaded, as Kevin argues, that Cathy's statement that Kevin's "celebrity clients . . . always wanted [Kevin] personally to handle them" proves that his labor was the sole source of revenue for Berman & Ely. First, Kevin himself stated in a declaration that he had not discussed Berman & Ely with Cathy since their divorce, and thus any information Cathy had about the business "is either outdated or completely incorrect." But even accepting Cathy's statement as accurate, it only establishes that certain clients requested Kevin's personal services; it does not establish that such work was the sole or even primary basis of Berman & Ely's income.

12

that he still had access to its benefits through his wife, and thus that particular evidence supporting a finding of bad faith would not be present.  Kevin counters that the court's position, if upheld, would prevent someone from passing a business on to a son or daughter upon retirement.  But the court did not hold, nor do we here, that a supporting party may not transfer a business to a relative (even a spouse), just that the supporting party may still be held to his or her obligations if there is a finding, supported by substantial evidence, that the transfer was in bad faith and the supporting party still has access to the business income.

### b. *Family Code section 4323, subdivision (b)*

Kevin argues that the court's order improperly considers his current wife's income, in violation of section 4323, subdivision (b).  As relevant here, this subdivision states that "[t]he income of a supporting spouse's subsequent spouse . . . shall not be considered when determining or modifying spousal support." (§ 4323, subd. (b).)  Section 4323, subdivision (b) prohibits both direct and indirect consideration; thus, a court cannot, for example, "account for the indirect effects of this additional income [from the subsequent spouse] on other considerations, including the husband's ability to pay and his standard of living." (*In re Marriage of Romero* (2002) 99 Cal.App.4th 1436, 1440, 1444-1445.)  Kevin asserts that because Berman & Ely is now owned by his wife, any future business profits will be earned by her, and therefore under section 4323, subdivision (b) cannot be considered in awarding or modifying spousal support.

We disagree.  The court was not considering Kevin's wife's income in awarding spousal support; it was declining to recognize a bad faith transfer and instead treating the business income as

13

if it were still Kevin's.  This is similar to *Dick*, in which the court disregarded the ownership structure of the supporting party's assets upon finding that structure was created to avoid financial obligations.  (*Dick, supra*, 15 Cal.App.4th at p. 162.)  It is also in line with *Sinks, supra*, 204 Cal.App.3d at page 594, in which the supporting spouse, having retired early for improper motives, was obliged to continue meeting his support obligations despite his retirement, either by "finding work elsewhere or using his separate property."  In neither *Dick* nor *Sinks* did the court undo the questionable transactions or retirement (see *Sinks*, at p. 594 ["The trial court's order does not prevent [the supporting spouse's] retirement or his enjoyment of his pension rights . . . ."]); rather, the court held the supporting parties to their support obligations as if those events had not occurred.  Similarly, here the court's order did not prohibit Kevin from retiring and disposing of his business however he chose, including giving it to his wife; but, having found that Kevin transferred the business to avoid his support obligations while continuing to reap benefits through his wife, the court did not abuse its discretion in holding him to the consequences of that decision, and imputing income to him as if the transfer had not taken place.[9]  To hold otherwise would be an invitation for supporting parties to use section 4323, subdivision (b) to shield their assets through bad faith transfers to their new spouses, an outcome the Legislature

---

[9]     Kevin notes that *Dick* and *Sinks* did not involve retirement at age 65 and asserts that *Reynolds* should control over those cases.  But since the court found (or at least was not convinced otherwise) that Berman & Ely's income was independent of Kevin's labor, *Reynolds* has no application.

14

could not have intended: "[T]he law does not sanction the shirking of familial responsibilities . . . ." (*Sinks*, at p. 594.)

We reject Kevin's argument that the court's order effectively forces his wife to work to support Cathy, or deprives her of income she earns through her own efforts. We again emphasize that the trial court found no credible evidence from which it could determine how Berman & Ely's income was derived, and how much could be attributed to Kevin's or his wife's personal labor as opposed to other sources. While our conclusion likely would be different had the court been able to determine that some or all of Berman & Ely's income was earned through Kevin's wife's efforts, in the absence of such a finding, or evidence compelling such a finding, there is no basis to reverse the court's order under section 4323, subdivision (b).[10]

### c. *Calculation of future business income*

Kevin argues that the court erred in basing the support order on Berman & Ely's income in 2014, when Kevin still owned and operated the business. Kevin claims the court was wrong to assume the business would continue to generate income at the

---

[10] Kevin also argues that because the court considered his wife's contribution to the couple's monthly expenses (which presumably were paid out of earnings from Berman & Ely), it was a "double dip" to further impute those earnings to Kevin for purposes of spousal support. We do not find this persuasive. Although the court in analyzing the factors under section 4320 noted that Kevin had reported that his wife contributed $5,000 a month to their combined expenses, there is no indication that the court considered that $5,000 as being in addition to the presumed future business income from Berman & Ely, or indeed that the $5,000 was a material factor at all in setting the amount of spousal support.

same level it did before Kevin retired.  Even if his wife was running the business capably, Kevin argues, there "is no indication that immediately out the gate she can make the same income as someone who founded the business, built up the business, cultivated clients, and had been operating the business for 30 years."

In the absence of credible evidence as to how Berman & Ely earned revenue and what part Kevin's participation played in those earnings, the court did not abuse its discretion in looking to the business's past earnings as a guide to future earnings.  (See *In re Marriage of Riddle* (2005) 125 Cal.App.4th 1075, 1077 (*Riddle*) [prior 12-month period adequate representative sample of salesperson's earnings for purposes of calculating future support obligations].)[11]  Nor did the court abuse its discretion in using the 2014 income in particular, as this was the only tax return presented to the court.  To the extent 2014 was an outlier, Kevin had the option to introduce other tax returns or business records to show this, but did not.  As for future earnings, the court invited Kevin to return with additional evidence should Berman & Ely's income decline after his retirement.

---

[11]  Kevin claims that *Riddle* "rejected the imputation of income based on historical earnings."  This is incorrect.  *Riddle* held that the trial court abused its discretion by basing support amounts on the previous two months of a salesperson's past earnings, a time period that did not provide a "properly representative sample."  (*Riddle, supra*, 125 Cal.App.4th at p. 1077.)  Far from rejecting the use of historical income data, the appellate court stated the trial court should have instead relied on data from a longer time period, namely the previous 12 months.  (*Ibid.*)

16

Kevin argues that once he made a prima facie showing of a material change in circumstances, it was Cathy's burden, not his, to demonstrate Berman & Ely's likely future income. Setting aside the question of whether this is a correct statement of the law, it is of no help to Kevin because he did *not* make a prima facie showing as to the business income—as discussed, the court did not believe there had actually been a material change in circumstances, just a shift in the legal ownership of an income-producing asset. Moreover, even if it were Cathy's burden, she satisfied it by providing the 2014 tax return, which was substantial evidence supporting the court's ruling.

Kevin also asserts that the court should have based the support award not on presumed future business earnings, but on the return Kevin would have received had he sold the business and invested the proceeds.[12] But this would make no sense given the court's finding that Kevin still had access to the asset through his wife, and therefore had access to greater income than would have been derived from a sale and investment of the proceeds. Because this finding is supported by substantial evidence, we are bound by it and will not speculate as to other possible remedies.

### d. *Practicality of court's solution*

Kevin argues that the court's imputation of business income to him is an "unreasonable and unworkable" result. Kevin asserts that "it will immerse the parties in perpetual litigation possibly for the rest of their lives over annual fluctuations in the business income . . . which will in turn . . .

---

[12]    Kevin and Cathy both submitted appraisals to the trial court valuing Berman & Ely. Kevin's appraisal valued the business at $209,500. Cathy's valued it at $536,000.

17

require the court to second guess every business decision made . . . ." Kevin implies that under the court's reasoning Berman & Ely's income potentially would be imputed to him in perpetuity, even if his wife retired, sold the business, divorced Kevin, or died.

We are not persuaded by these concerns. The trial court indicated no interest in dictating how the business was run, merely in how much income it was earning. To the extent fluctuations in business income give rise to litigation, that risk existed prior to the court's order, since Berman & Ely was founded before the divorce and had been part of Kevin's income equation since then. The court's ruling simply maintains that status quo. Moreover, courts are capable of accounting for fluctuating income in setting spousal support. (*Riddle, supra*, 125 Cal.App.4th at p. 1081.)

We also see no indication that the order forever binds Berman & Ely's income to Kevin. In the trial court's view, the transfer of Berman & Ely accomplished nothing other than a legal change of ownership, with Kevin still entitled to all the benefits of the business income by virtue of his marriage. In other words, the court found that nothing had changed as to Kevin's financial circumstances other than the loss of his salary. Should future events indicate that Kevin is no longer receiving the benefits of that business income, or that circumstances otherwise have materially changed, nothing in the court's order prevents him from seeking relief at that time.

**DISPOSITION**

The orders are affirmed.  Cathy is entitled to costs on appeal.[13]


FLIER, J.

WE CONCUR:


BIGELOW, P. J.


GRIMES, J.

---

[13]    Cathy has requested attorney fees on appeal.  Kevin contends that the trial court has already awarded Cathy fees to defend the appeal.  The trial court is in a better position to determine both entitlement to and amount of attorney fees in this case.  (See *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1267.)  Cathy may seek appellate attorney fees through an appropriate motion in the trial court.