Filed 4/19/21  Marriage of Peyman CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re the Marriage of SHERLY and RAMIN PEYMAN. | B300628 (Los Angeles County Super. Ct. No. BD527501) |
| SHERLY PEYMAN, Plaintiff and Respondent, v. RAMIN PEYMAN, Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael R. Powell, Judge.  Affirmed.

Joel S. Seidel for Defendant and Appellant.

Law Offices of Katherine R. Cohan and Katherine R. Cohan for Plaintiff and Respondent.

# INTRODUCTION

Ramin Peyman appeals from an order denying his request for a modification of his obligations for child and spousal support to zero. Ramin[1] filed the request 10 days after the family court ordered Ramin to pay $6,027 in monthly child support and $4,500 in monthly spousal support following a six-day postjudgment hearing. On appeal, Ramin contends the family court abused its discretion in denying the requested modification because he had not been receiving any pay from his law firm since September 2018 (before the hearing), and Ramin's law partner obtained a temporary restraining order (after the hearing but before the support order) preventing Ramin from drawing income from his law practice. Ramin argues his deteriorating financial condition constituted a material change in circumstances warranting modification of his support obligations. Because most of Ramin's argued changed circumstances occurred before the family court issued its statement of decision setting Ramin's support obligations, we affirm.

# FACTUAL AND PROCEDURAL BACKGROUND[2]

A. *The Parties and the Marital Dissolution*

Sherly and Ramin were married in June 1999. They separated in May 2010, and a judgment dissolving their marriage

---

[1]     We refer to Ramin and Sherly Peyman by their first names to avoid confusion.

[2]     Our summary of the facts is based on the undisputed facts in the family court's December 18, 2018 statement of decision and

was entered in March 2012. They have three minor children together, who at the time of the postjudgment hearing were 11, 12, and 15 years old.

Ramin is an attorney, and for more than 20 years he had practiced law as an equal partner with Pejman Rahnama at the Law Offices of Peyman & Rahnama, Inc. (P&R). P&R specialized in workers' compensation and personal injury contingency cases; it earned yearly gross income of more than $4 million in 2015, 2016, and 2017. Although Ramin and Rahnama remained equal partners in P&R, in November 2016 they entered into a corporate compensation agreement providing that Rahnama would receive an additional $1,000 per week commencing January 1, 2016 and an additional $250,000 upon the sale of a jointly-owned office building, in recognition of Rahnama's greater contribution of time to the practice after 2010.

Sherly has a bachelor's degree in psychology and child development. She did not work outside the home during the marriage, and from the parties' separation in 2010 through 2018, Sherly was not employed and made minimal efforts to obtain training or work.

As part of a marital settlement agreement incorporated into the March 2012 judgment of dissolution, Ramin and Sherly stipulated to joint legal custody of the children, with Sherly having primary physical custody. Ramin agreed to pay monthly child support of $4,000 and spousal support of $3,500. The parties agreed in May 2013 to increase Ramin's custody time

the declarations submitted by the parties in connection with Ramin's December 28, 2018 request to modify the support order.

with the children and reduce his child support obligation to $3,500 per month.

B.    *2018 Hearing on Custody and Support Orders*

On July 5, 2016 Ramin filed a request for order (RFO) to modify custody and child and spousal support. On March 12, 2018 Sherly filed an RFO to modify spousal support. The family court[3] set an evidentiary hearing on the parties' RFOs. On April 16, 2018 the matter was assigned to a long cause courtroom for a hearing that was ultimately set for October 29, 2018.

On April 18, 2018 Ramin filed an income and expense declaration reporting a significant change in income over the prior year because "[b]eing involved in this litigation has reduced my input by 60% [and m]y partner and I have started dissolution of Partnership." On October 18, 2018 Ramin submitted an income and expense declaration reporting $19,500 in monthly wages and $12,888 in monthly self-employment income based on his average monthly share of P&R's net profits over the 18 months ending June 30, 2018. Ramin also reported non-retirement assets of $160,000, including equity in his home.

Ramin filed a trial brief on October 18, 2018, in which he stated, "[Ramin] is a partner in a law firm, which is currently in the process of dissolution. . . . [Ramin] has been unable to work at a level commensurate to his partner for many years, directly resulting in the break-up of the law practice. Additionally, as described more fully in the [income and expense declaration] [Ramin] owes his partner significant back-compensation pursuant to a Corporate Compensation Agreement for [Ramin's]

---

[3]    Judge Timothy P. Dillon.

4

failure to contribute equally to the firm.[4]  The ultimate financial impact and reduction of [Ramin's] income in the future, once the firm's dissolution and the unwinding of other joint investments with his partner are complete, is unknown.  However, [Ramin] anticipates that his earning capacity will be severely diminished as he will not only owe his partner significant sums but will unlikely be able to maintain a same level of legal practice as a solo practitioner."[5]

The family court[6] held a six-day long cause hearing on the parties' RFOs from October 29 to November 6, 2018, and after receiving posthearing briefing, the matter was submitted on November 21, 2018.  On December 18, 2018 the court issued an 81-page "Statement of Orders and Reasons After Hearing on Post-Judgment Requests for Orders" (statement of decision).[7]

---

4    Ramin's October 18, 2018 income and expense declaration stated Ramin owed Rahnama "a lump sum payment of $250,000" plus "$1,000/week, commencing January 1, 2016, or, approximately another $147,000 through the end of October 2018 . . . payable upon the final dissolution of the firm."

5    On our own motion, we augment the record with Ramin's April 23, 2018 and October 18, 2018 income and expense declarations and Ramin's October 18, 2018 trial brief.  (Cal. Rules of Court, rule 8.155(a)(1)(A).)

6    Judge Bruce G. Iwasaki presided over the long cause hearing and entered the December 18, 2018 statement of decision.

7    The family court referred to its ruling as a "statement of decision," but it observed one was not required under Code of Civil Procedure section 632 because the ruling was an order after a postjudgment hearing, not a trial, and the parties did not request a statement of decision.  It does not appear the court

5

With respect to child support, the court found Ramin's October 18, 2018 income and expense declaration "reported average monthly income of $19,500. It appears that in 2016 and 2017, his average monthly income was closer to $50,000. Information submitted for his law practice income for 2017 and the first six months of 2018 reflect average monthly income of $23,880. The Court uses that for [Ramin's] self-employment income." The court further found Ramin had perquisite income of $5,279 per month, but his "other potential sources of income, including rental income are negative." The court found Sherly did not have income and declined to impute income to her.[8] Based on these findings and the court's order regarding the parties' custodial timeshare,[9] the court calculated monthly child

complied with the requirements for statements of decision set forth in California Rules of Court, rule 3.1590, which provides for a proposed statement of decision, the filing of objections, and preparation of a final statement of decision. (Cal. Rules of Court, rule 3.1590(f)-(i).)

[8] The family court found Sherly made minimal efforts to seek employment, but "[b]ased on expert psychiatric and vocational evidence, the Court decline[d] to find that [Sherly] ha[d] earning capacity."

[9] The principal focus of the statement of decision was the parties' custody dispute, which is not at issue in this appeal. Sherly had alleged Ramin physically abused the children, but the family court (Judge Dillon) found no evidence of abuse and denied Sherly's request for a restraining order. The family court (Judge Iwasaki) found Sherly had alienated the children from Ramin and ordered Ramin to have sole custody of the two younger children for a three-month period, during which Sherly would have sole custody of the oldest son. After three months, the parties would share equal custody of the younger children.

support using the DissoMaster[10] program and ordered Ramin to pay $6,027 per month in child support effective January 1, 2019.

With respect to spousal support, the family court considered the statutory factors for determining support set forth in Family Code section 4320.[11]  The court found Ramin "owns interests in limited liability companies that do not generate income.  He owns a home and has a retirement account, and owes money to his law partner, the IRS, on his credit card, and to former attorneys in the sum of approximately $310,000.  He has not shown an inability to borrow on his assets."  The court found Ramin's "income fluctuates and is undergoing some transition, but he has the demonstrated ability to earn over $25,000 per month and has the ability to pay spousal support."  The court ordered Ramin to pay $4,500 per month in spousal support

---

[10]    DissoMaster is a computer software program widely used by courts and the family law bar in setting child and spousal support pursuant to the statewide uniform guideline set by Family Code section 4055.  (See *In re Marriage of Olson* (1993) 14 Cal.App.4th 1, 5, fn. 3.)

[11]    All further undesignated statutory references are to the Family Code.  Section 4320 requires the court to consider 14 factors in ordering spousal support.  As relevant to this appeal, section 4320, subdivision (c), includes "[t]he ability of the supporting party to pay spousal support, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living."  Section 4320, subdivision (e), includes "[t]he obligations and assets, including the separate property, of each party."

commencing January 1, 2019, reduced to $2,500 per month after February 1, 2020.[12]

C.     *Rahnama's Lawsuit Against Ramin*

On November 30, 2018 Rahnama filed a complaint and petition against Ramin and P&R for breach of contract, breach of fiduciary duty, and for appointment of a provisional director. (*Rahnama v. Peyman et al.* (Super. Ct. L.A. County, 2018, No. 18STCP02990); the *Rahnama* action.)  The same day Rahnama applied ex parte for appointment of a provisional director and issuance of a temporary restraining order enjoining Ramin from withdrawing funds from P&R.

In his declaration in support of his application, Rahnama stated, "Commencing in or about February 2018, P&R began experiencing a downturn in gross and net income due to a variety of factors," including Ramin's "lack of attention to and involvement in the work of the practice."  "Despite my repeated protests . . . that we must both reduce, if not abate, our claims to income from the firm . . . [Ramin] has instead forcibly and argumentatively forced our comptroller . . . to give him blank firm checks, which he has written to himself and deposited, the last being two such checks which he obtained on November 22, 2018, which he filled out for a total of $12,000, and deposited into his personal bank account."  Rahnama stated these withdrawals forced Rahnama to advance personal funds into P&R so that it could make payroll and cover litigation advances.  Rahnama also stated he was owed $151,000 pursuant to the 2016 corporate

---

[12]     The family court also ordered Ramin to pay Sherly $74,000 in need-based attorney fees and to pay for the children's orthodontic care.

8

compensation agreement plus $250,000 upon the sale of P&R's building.

On November 30, 2018 the trial court[13] entered a temporary restraining order, ordering that until the court adjudicated Rahnama's petition for appointment of a provisional director of P&R, the partners were enjoined from taking payment or withdrawing money from P&R's accounts.

On January 3, 2019 Ramin filed an opposition to the petition. In his supporting declaration, Ramin stated P&R's financial distress did not result from a decrease in gross income, but instead, from Rahnama's attempts to create liquidity problems by holding money in the firm's client trust account. Ramin stated P&R was "on track to gross somewhere around $4 million again in 2018," in line with its performance the previous three years. Ramin also submitted a report from a forensic certified public accountant prepared in the family court action showing "the [firm's] average monthly cash flow for January 2016 through June of 2018 was over $48,000."[14] Ramin declared he took a draw of $4,000 in September 2018, $17,170 in October, and $19,169 in November. These checks were handwritten because Rahnama had ordered the firm bookkeeper not to issue any checks to Ramin.

After a hearing, on January 22, 2019 the trial court granted Rahnama's application and issued an injunction prohibiting the

---

[13] Judge James C. Chalfant issued the temporary restraining order and presided over Rahnama's petition for a preliminary injunction and appointment of a provisional director.

[14] The report is not in the appellate record. The accountant was appointed by Judge Dillon, and the report was presented during the long cause hearing before Judge Iwasaki.

9

partners from receiving money from the firm until a provisional director was in place. The court's order stated, "[Ramin's] prognostication of the firm's 2018 gross income is not well-supported. . . . [T]he firm's bookkeeper and comptroller, declares that the firm actually grossed approximately . . . half a million less than the previous year. . . . This point therefore supports Rahnama's stance that the firm is in financial difficulty." The order further stated, "[Ramin's] assertion that the firm has over $630,000 in the client trust account is not helpful because he does not explain how much of that amount, if any, belongs to the firm and not clients."

D.   *Ramin's Second Request for Order Modifying Child and Spousal Support*

On December 28, 2018—10 days after Judge Iwasaki issued his statement of decision (and before the support orders took effect)—Ramin filed an RFO in the family court[15] to reduce his support obligations to zero. In his supporting declaration, Ramin explained the RFO was "due to the recent change in my financial circumstances. As detailed below, I am in the midst of litigation with my partner in my law practice. My partner recently obtained an injunction against me to prevent me from withdrawing any funds, including salary, from our law practice. My law practice is my sole source of income, and I currently have no income from which to meet my support obligations." Ramin further stated, "I have received no salary from the firm since my September 2018 paycheck, and no distributions or other

---

[15]   Judge Michael R. Powell presided over the hearings on Ramin's second RFO and issued the final order at issue in this appeal.

10

payments from the law practice in the last month, and I do not anticipate receiving any funds in January 2019, at which time the new support orders commence."[16]  Ramin declared he owed Rahnama approximately $415,000 pursuant to the 2016 corporate compensation agreement that would be payable upon the final dissolution of P&R.  Ramin asserted he had no sources of income or cash flow aside from his law practice, and he had already borrowed substantial funds and had no ability to borrow more.

In his December 28, 2018 income and expense declaration, Ramin stated he worked 30 hours per week at P&R.  But his declaration reflected no income from employment.  The declaration identified $160,000 in real and personal property, including equity in Ramin's home, but it did not include any retirement assets.  Ramin identified three investment and rental properties, but he stated they all had experienced a loss in 2017, as the family court had noted in the December 18, 2018 statement of decision.  Finally, Ramin reported $40,000 in credit card debt; approximately $497,000 owed on a line of credit; $61,284 owed for a 2017 tax liability; $157,906 owed for attorneys' fees and costs (including to Sherly's counsel); and $32,318 owed on two loans taken against his 401(k) retirement plan.  Ramin stated he contacted the 401(k) plan administrator to inquire about a further loan and was informed he could not borrow further.

---

[16]  Although Ramin stated in the *Rahnama* action that he had received funds from the firm in September, October, and November, these were described by him as "draws" (later found by Judge Chalfant to be improper).  It appears that Ramin had not been paid any salary since September 2018.

11

On March 1, 2019 Sherly filed a responsive declaration, objecting to any reduction in support and seeking an increase in child support from $6,027 per month to $8,553.[17]  In an attached memorandum and declarations, Sherly argued that Ramin failed to show a change of circumstances from those presented at the long cause hearing, and she filed Ramin's declaration from the *Rahnama* action as evidence Ramin's interest in P&R had significant value, including monthly cash flow of $48,000 for each partner and $629,000 in the client trust account.

On March 7, 2019 Ramin filed a reply declaration in support of the RFO.  Ramin submitted the January 22, 2019 court order in the *Rahnama* action and declared, "This injunction, which has now become permanent pending the appointment and decisions of the provisional director, has prevented me from withdrawing any further monies, and I have not received any monies from the law practice since November 2018."  Ramin stated he had exhausted his $500,000 line of credit

---

[17]     Sherly argued Judge Iwasaki had excluded Ramin's monthly salary of $19,500 in the December 18, 2018 DissoMaster calculation, instead using only Ramin's self-employment income of $23,880 from his partnership draw.  She recalculated Ramin's child support obligations using the DissoMaster program with both sources of income, which increased Ramin's monthly child support obligation to $8,588.  On January 2, 2019, Sherly filed a motion for new trial on child support and attorneys' fees based on the asserted omission.  On March 29, 2019 Judge Iwasaki denied Sherly's motion for new trial on procedural grounds, but he stated the exclusion of Ramin's salary was not intentional and Sherly "is free to argue, in response to [Ramin's] request to modify support . . . , that the calculation of [Ramin's] income was mistaken, and thus the amount to be ordered should be different from what [Ramin] contends."

and had refinanced his home mortgage to absorb the line of credit into a larger mortgage.  Ramin reiterated he could no longer borrow against his 401(k) account, and he attached a March 5, 2019 email from his retirement plan client services manager, stating, "After a review of your 401k account, due to having previous loans being deemed as distribution, you are currently not able to take out another loan on your 401k account until you reach age 59.5."  (Ramin was then 50.)  Ramin stated he borrowed money from friends and family to meet his December 2018 support payments, and had he not done so, his license to practice law would have been suspended by the State Bar.[18]

E.      *March 14, 2019 Hearing on Ramin's Second RFO*

After supplemental briefing, at the March 14, 2019 hearing on Ramin's second RFO, the family court stated, "It appears that the issues that relate to the present modification request were present . . . during the trial in [the] case.  And specifically I had noted that it looked like in September of 2018 that there were issues regarding what was happening with [Ramin's] firm."  However, the court observed it was unclear from the statement of decision whether P&R's financial problems causing Ramin's loss of income had been addressed at the long cause hearing.  Accordingly, the court ordered, "The [c]ourt would like Judge Iwasaki to state whether he took into consideration [Ramin's]

---

[18]     Ramin requests we take judicial notice of the fact his license to practice law was suspended on March 21, 2020 for failure to pay his support obligations.  We deny his request because his suspension in 2020 was not before the family court at the time of its July 9, 2019 statement of decision denying the RFO.

13

earnings during the aforementioned time period. That is the September . . . 2018 to the November, 2018, date." The court continued the hearing on the second RFO until May 22, 2019 to allow Judge Iwasaki to respond.

On March 29, 2019 Judge Iwasaki issued a minute order responding to the family court's inquiry: "In reaching its determination regarding support, the Court considered [Ramin's] October 18, 2018 Income and Expense declaration and his testimony at trial. Accordingly, the Court considered some information that was apparently current as of the time of trial, including salary documentation in October 2018. The Court also received evidence about the imminent dissolution of [Ramin's] law partnership and that this placed [Ramin's] current and future income in considerable flux. But the only specific evidence regarding the profits from the law partnership that the Court considered was through June 2018, as reflected in a profit and loss statement for the period January 2018 through June 2018, attached to [Ramin's income and expense declaration]. Thus, the Court had no information about [Ramin's] self-employment income, that is, profit from the law partnership, for any time after June 30, 2018."

On May 17, 2019 Ramin filed a supplemental reply brief and declarations in support of the RFO, advising the family court the injunction from the *Rahnama* action was still in place and Ramin had not received any salary from P&R since September 2018 or other funds from the firm since November 2018. Ramin declared he was living on funds borrowed from friends and had no other source of financing—his home equity was minimal after refinancing his mortgage to close the line of credit and satisfy his other debts, and his monthly mortgage payments had doubled as

a result of the refinancing.[19] Ramin attached bank documentation dated January 16, 2019 evidencing the payoff and closure of the line of credit. Ramin also attached correspondence from a bank representative dated May 16, 2019 stating his April and May mortgage payments had been returned for insufficient funds. Ramin stated he was in the process of leasing his home and attached a realtor rental listing agreement executed on February 7, 2019. Ramin also filed a declaration from Rahnama, dated April 25, 2019, stating the deadlocked board of P&R had still not implemented the involvement of a provisional director. Rahnama declared, "The firm has not been operating profitably for some time, particularly as client intake is down, and lack of funds has diminished the firm's advertising and promotion. Further, before I will hereafter agree that [Ramin] receive funds from the law practice, I must first recover the funds that I advanced to the firm to cover operating expenses, as well as the monies currently due to me pursuant to said Corporate Compensation Agreement."

F.    *May 22, 2019 Hearing on Ramin's Second RFO*

At the May 22, 2019 hearing on the second RFO, the family court asked Ramin's attorney to explain why Ramin had continued to work 30 hours each week but had no income for the prior five months. Ramin's attorney explained that Ramin had no choice but to continue working at P&R despite receiving no

---

[19]    On May 17, 2019 Ramin filed an income and expense declaration listing the value of his real and personal property as $160,000. However, this amount was unchanged from the value listed in Ramin's December 28, 2018 income and expense declaration.

income: "For him to simply turn around and start a brand new practice with zero capital, zero income would be—he'd start at zero. . . . His only hope is that there will be resolution of the dissolution of the partnership. He'll receive some funds from it. And he'll be able to turn and pivot and get to work again." The court responded, "His ability to pay may be presently in abeyance temporarily. . . . [I]t's your burden to show me that there's no way this is going to change. . . . [Y]ou have a person who has a job but doesn't get income from the job and potentially has an interest in the partnership that may be of value to pay the support in the event there's an ability to pay that support." After hearing further argument, at Ramin's request the court took the matter under submission and issued a statement of decision.

G.    *July 9, 2019 Statement of Decision*

On July 9, 2019 the family court issued a nine-page statement of decision denying the RFO. The court reasoned that because Ramin filed the RFO just 10 days after the December 18, 2018 support order, the court should consider the section 4320 factors in determining Ramin's ability to pay spousal support, including his earning capacity and income (§ 4320, subd. (c)) and his assets and obligations (§ 4320, subd. (e)).

With respect to Ramin's income, the family court found that evidence Ramin's law firm income was "in flux" was already before the court at the long cause hearing. Further, Ramin "has not explained why he did not introduce evidence with the family court that he was currently not making any income. Accordingly, this Court believes that [Ramin's] lack of income generation between October and November was contemplated as part of [Ramin's] income fluctuation." As to Ramin's earning capacity,

16

the family court rejected Ramin's contention he had to work at P&R without pay because the partnership was unprofitable. The court explained, "The lack of income may be the result of unreported income that is being directed to the firm, unearned income that has not been disclosed. . . . This Court was presented no credible information as to why the [Ramin] remains working while receiving no income whatsoever." With respect to Ramin's assets, the family court found Ramin had "failed to provide this Court with an accounting as to the value or lack of value in [Ramin's] interest in his law firm or the investments identified in his declaration." Further, the $160,000 in assets Ramin declared in his May 17, 2019 income and expense declaration provided "prima facie evidence that [Ramin] has the ability to pay the [s]pousal [s]upport awarded on December 18, 2018."

As to child support, the court found Ramin's "statement that he has no income does not address his burden to clearly provide evidence that a 10-day old order should be reduced to zero. [Ramin] did not sufficiently prove that the income from the law firm was reduced to the extent that expenditures exceed gross receipts. The court is legally unsatisfied that a temporary injunction that prohibits further withdrawals of funds by him constitutes his entire ability to receive funds from the law firm at some later time." Further, "there is no explanation as to why his lack of income is not consistent with the ebb and flow of the law firm as indicated by the family court that ordered the initial support."

Finally, referring to its discretion under section 4058, subdivision (b), to consider Ramin's earning capacity in lieu of his actual income in determining child support, the family court concluded Ramin had the earning capacity to support the ordered

17

amount.  The court observed Ramin continued to work the same 30 hours each week that he had listed on his October 18, 2018 income and expense declaration.

Ramin timely appealed.

## DISCUSSION

A.    *The Changed Circumstances Rule and Standard of Review*

"As a general rule, courts will not modify child or spousal support unless there has been a material change of circumstances following the previous determination."  (*In re Marriage of Usher* (2016) 6 Cal.App.5th 347, 357 (*Usher*); accord, *In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1048 (*Cryer*).)  "'"[T]he reason for the change of circumstances rule is to preclude relitigation of the same facts" and to bring finality to determinations concerning financial support.'"  (*Usher*, at p. 357; accord, *In re Marriage of Rosenfeld & Gross* (2014) 225 Cal.App.4th 478, 490.)

The party seeking modification of a child support order bears the burden of showing changed circumstances sufficiently material to support the modification.  (*Usher, supra*, 6 Cal.App.5th at pp. 357-358; *Cryer, supra*, 198 Cal.App.4th at p. 1048.)  "'There are no rigid guidelines for evaluating whether circumstances have sufficiently changed to warrant a child support modification.'"  (*Usher*, at p. 358.)  "Each case stands or falls on its own facts, but the overriding issue is whether a change has affected either party's financial status."  (*In re Marriage of Laudeman* (2001) 92 Cal.App.4th 1009, 1015; see *In re Marriage of Leonard* (2004) 119 Cal.App.4th 546, 556 ["'So long as the statewide statutory formula support requirements are met (Fam. [Code,] § 4050 et seq.), the determination is made on a

18

case-by-case basis and may properly rest on fluctuations in *need* or *ability to pay*.'"].) "'The ultimate determination of whether the individual facts of the case warrant modification of support is within the discretion of the trial court.'" (*Usher*, at p. 358.)

Likewise, the party seeking a modification of an award of spousal support bears the burden of producing evidence of the changed circumstances. (*In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1480; accord, *In re Marriage of Tydlaska* (2003) 114 Cal.App.4th 572, 575.) "'In determining whether a change of circumstances has occurred, the trial court is required to reconsider the same standards and criteria set forth in . . . Family Code section 4320 it considered in making the initial long-term order at the time of judgment and any subsequent modification order.' [Citation.] These criteria include, among other things, the earning capacity of each party, [and] the ability of the supporting party to pay spousal support." (*In re Marriage of Berman* (2017) 15 Cal.App.5th 914, 920 (*Berman*); see *In re Marriage of MacManus* (2010) 182 Cal.App.4th 330, 335 ["the trial court is required to consider and weigh all the factors enumerated in section 4320 to the extent they are relevant to the case"].)

We review the family court's order granting or denying a request for a modification of child support and spousal support for an abuse of discretion.[20] (*Usher, supra*, 6 Cal.App.5th at

---

[20] However, in reviewing a child support order, we are also "'mindful that "determination of a child support obligation is a highly regulated area of the law, and the only discretion a trial court possesses is the discretion provided by statute or rule."'" (*In re Marriage of Williamson* (2014) 226 Cal.App.4th 1303, 1312.) Accordingly, "[t]o decide whether the trial court followed established legal principles and correctly interpreted the child

19

p. 357 [child support]; *Berman, supra*, 15 Cal.App.5th at p. 919 [spousal support].) "Under this standard, we consider only 'whether the court's factual determinations are supported by substantial evidence and whether the court acted reasonably in exercising its discretion.' [Citation.] 'We do not substitute our judgment for that of the trial court, but confine ourselves to determining whether any judge could have reasonably made the challenged order.'" (*In re Marriage of Macilwaine* (2018) 26 Cal.App.5th 514, 527; accord, *In re Marriage of Wittgrove* (2004) 120 Cal.App.4th 1317, 1327.) "On review for substantial evidence, we examine the evidence in the light most favorable to the prevailing party and give that party the benefit of every reasonable inference. [Citation.] We accept all evidence favorable to the prevailing party as true and discard contrary evidence." (*In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1151; accord, *In re Marriage of Rothrock* (2008) 159 Cal.App.4th 223, 230.)

However, a different standard applies where, as here, the appellant had the burden of proof in the family court. "'In the case where the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals, it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment.' [Citation.] '[W]here the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.'" (*Juen v. Alain Pinel Realtors, Inc.*

_____

support statutes, we apply the independent standard of review." (*In re Marriage of Alter* (2009) 171 Cal.App.4th 718, 731.)

20

(2019) 32 Cal.App.5th 972, 978-979; accord, *Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838; *In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.) "'Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'" (*Juen*, at p. 979; accord, *Glovis America, Inc. v. County of Ventura* (2018) 28 Cal.App.5th 62, 71; *Dreyer's Grand Ice Cream*, at p. 838.) "'[W]here . . . the judgment is against the party who has the burden of proof, it is almost impossible for him to prevail on appeal by arguing the evidence compels a judgment in his favor.'" (*Atkins v. City of Los Angeles* (2017) 8 Cal.App.5th 696, 734; accord, *Bookout v. State of California ex rel. Dept. of Transportation* (2010) 186 Cal.App.4th 1478, 1486.) "That is because unless the trial court makes specific findings of fact in favor of the losing [party], we presume the trial court found the [losing party's] evidence lacks sufficient weight and credibility to carry the burden of proof. [Citations.] We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence." (*Bookout*, at p. 1486.)

B.    *The Family Court Did Not Abuse Its Discretion in Denying the RFO*

On appeal, Ramin contends the trial court should have reduced his support obligations to zero because after the conclusion of the 2018 long cause hearing, "Ramin's only source of income abruptly ceased," leaving him without means to pay the December 18, 2018 support order. However, the trial court found

21

that Ramin failed to meet his burden to present evidence showing his ability to pay support had changed materially from the circumstances considered in the support order. (*Usher, supra*, 6 Cal.App.5th at p. 357.) On appeal, Ramin has failed to demonstrate the evidence he presented compelled a contrary conclusion.

1. *Ramin did not show his circumstances changed after December 18, 2018*

The December 28, 2018 RFO and supporting declarations cited several financial difficulties bearing on Ramin's asserted inability to pay support as ordered on December 18, 2018, but Ramin did not establish that these circumstances developed after the family court issued the support order (or even after the long cause hearing in November 2018). For example, the following circumstances listed in Ramin's second RFO were cited in submissions he made prior to the long cause hearing: Ramin and Rahnama were in the process of dissolving P&R; Ramin, although an equal partner in the firm, owed Rahnama $1,000 per week in back-compensation for more than 150 weeks since January 1, 2016 plus $250,000 upon the sale of the firm's real property; and Ramin's "earning capacity will be severely diminished as he will not only owe his partner significant sums but will unlikely be able to maintain a same level of legal practice as a solo practitioner." The family court also recognized Ramin's investment properties were generating losses and Ramin had no other source of income other than from P&R. None of these circumstances constituted a changed circumstance.

22

Ramin contends the loss of monthly income of $29,150[21] is a material change in circumstance warranting modification of support. But Ramin lost this income before the court issued its statement of decision. Ramin admitted he received no salary from P&R after his September 2018 paycheck and no payments of any kind from P&R after November 2018. Ramin took draws against partnership income of $17,170 in October 2018 and $19,169 in November, but he did so in knowing disregard of Rahnama's demands (leading to the injunction) and in response to P&R's refusal to pay his salary.

Even if Ramin was justified in taking these draws and reasonably expected he could prospectively withdraw money from P&R, Ramin knew at the time of the long cause hearing that his only source of income was precarious and P&R was hastening toward a bitter dissolution, if not the litigation that predictably ensued. The family court was aware of these problems to some degree, noting Ramin's income was "in flux." But Ramin could have presented evidence at the hearing that his salary had ceased in September. Ramin also could have advised the court that he received no funds from P&R after his November draw, and he was prospectively barred from receiving funds by the November 30, 2018 restraining order. Yet Ramin did not provide this information to the family court before the matter was

---

[21] The family court assumed in calculating Ramin's support obligations that Ramin earned $29,150 in income based on his average monthly self-employment income (his partnership draw) in the first six months of 2018 ($23,880) plus monthly perquisite income ($5,270). As noted, Sherly argued and Judge Iwasaki later acknowledged that he had inadvertently omitted Ramin's $19,500 regular monthly salary from this calculation.

submitted on November 21 or before the court issued its statement of decision on December 18, 2018. Ramin also could have requested the court consider his changing financial position by filing a motion for reconsideration based on new evidence within 10 days of the court's order (Civ. Proc. Code, § 1008, subd. (a)),[22] and he could have appealed the order (*id.*, § 904.1, subd. (a)(2)).[23] He did neither. Instead, he filed the second RFO, but ""[a]bsent a change of circumstances, a motion for modification is nothing more than an impermissible collateral attack on a prior final order.""" (*In re Marriage of Rosenfeld & Gross*, *supra*, 225 Cal.App.4th at p. 490; accord, *In re Marriage of Stanton* (2010) 190 Cal.App.4th 547, 554.)

Ramin argues in his reply brief, "The record clearly demonstrates that due to the injunction and other financial hardships facing [P&R] from November 30, 2019 up to the

---

[22] At oral argument, Ramin's attorney asserted Ramin could not have sought reconsideration of the December 18, 2018 support order based on the entry of the *Rahnama* temporary restraining order because the restraining order was only temporary. However, Ramin relied on the restraining order when he filed the RFO seeking a permanent support reduction on December 28. Further, although the court in *Rahnama* had granted a preliminary injunction by the time the RFO was heard in May 2019, the injunction was still temporary—intended to last only until the appointment of an independent director of P&R. There is no evidence Ramin's right to draw income for the hours he continued to work at P&R was permanently restrained.

[23] Ramin potentially could have filed objections to the family court's initial statement of decision. (Cal. Rules of Court, rule 3.1590(g).) It is not clear, however, whether the statement of decision was intended to be a proposed or final order. (*Id.*, rule 3.1590(f).)

24

May 22, 2019 hearing date, Ramin . . . had sunk deeply into debt." The record is not so clear. Ramin's second RFO and supporting declarations asserted Ramin had non-retirement assets of $160,000 and non-mortgage liabilities of nearly $700,000, including $40,000 in credit card debt, $497,000 owed on the home equity line of credit, a 2017 tax liability of $61,284, $157,906 in unpaid attorneys' fees, and $32,318 in loans against his 401(k) plan. But Ramin has not presented evidence showing that any of these substantial debts were incurred after the long cause hearing. There is no evidence in his declarations, for example, that he borrowed from his 401(k) plan or his line of credit after the family court issued its December 18, 2018 statement of decision (or after the matter was submitted on November 21, 2018). As the December 18 statement of decision stated, as of that date Ramin owed "money to his law partner, the IRS, on his credit card, and to former attorneys in the sum of approximately $310,000. He has not shown an inability to borrow on his assets." It was Ramin's burden to prove changed circumstances, but he failed to present evidence any additional debts accrued after December 18, 2018.[24]

---

[24] Ramin also did not present evidence his financial position deteriorated significantly from the time he filed the second RFO in December 2018 and the hearing in May 2019. As the family court observed, Ramin's May 17, 2019 income and expense declaration listed the value of his real and personal property as $160,000, which was unchanged from December 2018. In the intervening period Ramin refinanced his home to absorb the $500,000 debt on his line of credit, and it is unclear what effect this had on his liquidity. Ramin presented evidence he borrowed $13,960 from his brother and $23,500 from his cousin after December 2018, and his cousin paid $23,874 toward Ramin's

2.      *The evidence Ramin presented in support of the RFO does not compel the conclusion Ramin's support obligations should have been reduced*

Ramin contends the fact he had received no income for five months at the time of the hearing on the second RFO as a result of the injunction was a "profound and unexpected change of circumstances" that warranted modification of the support orders.  As discussed, Ramin had already suffered a loss of income prior to issuance of the December 18, 2018 order.  But even assuming Ramin and the family court did not anticipate five months without income at the time of the December 18 order, Ramin failed to demonstrate he had no ability to pay his support obligations by using or borrowing against his $160,000 in non-retirement assets, his interest in P&R, or by obtaining compensation for the 30 hours per week he was working at P&R.

As discussed, as of May 2019 Ramin continued to work 30 hours per week at P&R, the same number of hours he had worked in October 2018.  The family court found Ramin failed to present evidence this work did not have any value (at P&R or elsewhere), noting the work produced unearned or unreported income, for which Ramin would be entitled to payment.  The family court also faulted Ramin for failing to present evidence as to the value of his interest in the law firm, especially given Ramin's position in the *Rahmana* action that the firm continued to generate gross income similar to prior years.

---

mortgage in March 2019, but Ramin did not provide evidence of the date by which his relatives expected repayment (for example, whether Ramin would need to repay the debt before receiving a final payout from P&R's dissolution).

On appeal, Ramin argues he could not have left P&R and worked as an attorney elsewhere because he owed a fiduciary duty to P&R and Rahnama. But Ramin in his October 2018 trial brief anticipated that at some point he would need to practice law outside of P&R, arguing P&R was being dissolved and Ramin's "earning capacity will be severely diminished as he will not only owe his partner significant sums but will unlikely be able to maintain a same level of legal practice as a solo practitioner." Further, Ramin has not established he could not lawfully leave his practice at P&R or that he would suffer any adverse consequences from doing so. (See *In re Marriage of Bardzik* (2008) 165 Cal.App.4th 1291, 1304 ["[W]here the payor parent loses his or her job and seeks a reduction in court-ordered support based on the changed circumstances of lack of income, it will be the payor parent, as moving party, who bears the burden of showing a lack of ability and opportunity to earn income."].)

*In re Marriage of Mosley* (2008) 165 Cal.App.4th 1375 (*Mosley*), relied on by Ramin, is distinguishable. There, the father took an in-house legal position with a salary that was less than one-third of his former law firm income, but it included the potential for a year-end bonus of up to 150 percent of the base salary. (*Id.* at pp. 1381-1382.) The trial court denied the father's request for modification, finding his annual income was comparable to his former position after including the projected year end-bonus, a one-time signing bonus, and payments from the former law firm. (*Id.* at pp. 1382-1383.) The Court of Appeal reversed, citing evidence the father had been using nearly all of his take-home salary to pay support and had to borrow to cover his living expenses while awaiting the year-end bonus that might not materialize. (*Id.* at p. 1386-1387.) The Court of Appeal

27

remanded the matter for trial court to calculate the father's support obligation based on his base salary, but with a mechanism for him to pay additional support based on any bonus he later received. (*Id.* at p. 1387.)

In contrast to *Mosley*, in which it was undisputed the father moved to a new job with a much lower salary and an uncertain year-end bonus, at the time of the hearing on the second RFO, Ramin remained a 50 percent partner in P&R, working the same 30 hours each week, and subject to the same compensation agreement that had applied at the time of the December 18 support order. And as discussed, he failed to show he had incurred any debt that he did not already have as of December 18, 2018. Ramin did not present any evidence showing he would not receive the value of the work he performed once the injunction in the *Rahnama* action lifted or, if not, why he continued to work without compensation. Nor did he show that he lacked the ability to borrow against the value of his interest in P&R or the $160,000 in real and personal property he owned[25] while waiting for payment for the hours he had worked and his likely payout from dissolution of the firm and sale of its building.[26] Ramin has therefore failed to present evidence that

---

[25] Ramin argues he had no remaining equity in his real and personal property, but he did not present evidence to support this assertion, instead including the value of the property on his May 17, 2019 income and expense declaration.

[26] Ramin's reliance on *Usher, supra*, 6 Cal.App.5th 347 is likewise misplaced. In *Usher*, the Court of Appeal reversed the family court's reduction of a father's child support obligation, finding that although the father's income had been reduced, substantial evidence did not support a finding of a material change in circumstances bearing on the father's ability to pay

compels reversal of the family court's order denying his second RFO.  (*Juen v. Alain Pinel Realtors, Inc., supra*, 32 Cal.App.5th at pp. 978-979; *Dreyer's Grand Ice Cream, Inc. v. County of Kern, supra*, 218 Cal.App.4th at p. 838.)

## DISPOSITION

The order is affirmed.  Sherly Peyman is to recover her costs on appeal.


                                        FEUER, J.

We concur:


        SEGAL, Acting P. J.


        MCCORMICK, J.[*]

---

support because he had not exhausted his monthly income and he had substantial liquid assets he could use to pay any remaining expenses.  (*Id*. at pp. 360-361.)

[*]     Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.